IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JASON DAVID MONACO, | ) | CASE NO.  5:24-CV-01271-CAB |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE CHRISTOPHER A. BOYKO |
| vs. | ) | UNITED STATES DISTRICT JUDGE |
| | ) | |
| WARDEN JAY FORSHEY, | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| Defendant. | ) | |
| | ) | **REPORT & RECOMMENDATION,** |
| | ) | **ORDER (DOC. NO. 21)** |

# Table of Contents

I.      Summary of Facts ............................................................................................................2

II.     Procedural History ...........................................................................................................4

III.    Exhaustion and Procedural Default ................................................................................15

IV.     Review on the Merits......................................................................................................46

V.      Second Motion for Discovery.........................................................................................62

VI.     Conclusion ......................................................................................................................66

This matter is before the magistrate judge pursuant to Local Rule 72.2.  Before the Court is the

Petition of Jason David Monaco ("Monaco" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to

28 U.S.C. § 2254. Monaco is in the custody of the Ohio Department of Rehabilitation and Correction

pursuant to journal entry of sentence in the case *State v. Monaco,* Tuscarawas County Court of Common

Pleas Case No. 2020CR080318.  For the following reasons, the undersigned recommends that the Petition

be DENIED.  Also before the Court is the pending Second Motion to Conduct Discovery (Doc. No. 21), which the Court DENIES.

## I.     Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The state appellate court summarized the facts underlying Monaco's conviction as follows:

{¶2} On August 14, 2020, Appellant was indicted for three counts of Gross Sexual Imposition in violation of R.C. 2907.05, three counts of Sexual Imposition in violation of R.C. 2907.06, one count of Kidnapping in violation of R.C. 2905.01, one count of Rape in violation of R.C. 2907.02, one count of Attempted Rape in violation of R.C. 2923.02 and 2907.02, four counts of Disseminating Matter Harmful to Juveniles in violation of R.C. 2907.31, and two counts of Pandering Obscenity Involving a Minor or Impaired Person in violation of R.C.2907.321.

{¶3} On August 20, 2020, Appellant appeared with counsel and entered a plea of not guilty.

{¶4} On October 21, 2020, Appellant appeared, again with counsel, to change his plea from not guilty on the indictment to guilty. Appellant filled out a signed Crim.R. 11 Change of Plea Form. The Form, in pertinent part, stated:

1) I have had the opportunity to discuss these matters with my attorney;

2) That I have confidence in my attorney, and accept his representation of me in this matter;

3) That I have not been coerced or required to plead guilty, and that no promises have been made to me by the Prosecuting Attorney, or anyone representing the State of Ohio; EXCEPT that:

AGREED, that in exchange for pleading Guilty to the indictment, the State will recommend that on Count Seven, this Court will impose upon the

2

Defendant an indefinite life sentence with no parole eligibility until he has served 15 years; and that all other terms of remaining counts be served concurrent to Count Seven for an aggregate prison term of 15 to life.

\* \* \*

I have not been forced or threatened in any way to cause me to sign and offer this plea. I offer this plea knowingly, intelligently and voluntarily. I have consulted with my attorney and have his advice and consent. I am satisfied with the legal representation and advice I received from my attorney.

{¶5} At the change of plea hearing, Appellant's counsel advised the court he reviewed the Crim.R. 11 change of plea form with Appellant. Based on those discussions, Appellant signed the form and entered a plea of guilty to the indictment.

{¶6} During the colloquy the trial court reviewed the Crim.R. 11 change of plea form with Appellant. Appellant acknowledged he signed the Crim.R. 11 form. The trial court reviewed the charges in the indictment, the penalty agreed to for a guilty plea, and asked if Appellant had any questions about the charges and sentence. The trial court also advised Appellant of the Constitutional rights he was waiving. Appellant acknowledged that he had no questions on the charges or sentence. He said he understood the charges and still wanted to plead guilty. After being fully advised of his rights, the charges against him, and the penalties associated with those charges, Appellant entered a plea of guilty.

{¶7} Prior to sentencing, Appellee provided the trial court with a summary of the facts of the case. Appellant had a close relationship with the victim and began molesting her at an early age. Appellant filmed the victim without her knowledge while she showered and engaged in sexual displays while in her presence. Appellant digitally penetrated the victim's vagina and made the victim touch his penis. Appellant locked victim in the basement when she was six years old and would not let the victim out until she engaged in sexual conduct with him.

{¶8} At age 13, Appellant forcibly held down the victim and attempted vaginal intercourse with victim, but was interrupted when someone else entered the room. Throughout this time, Appellant showed the victim adult and child pornography. Appellant used a webcam to record himself sexually abusing the victim while simultaneously watching a video of another adult abusing a child. A search of Appellant's devices revealed a plethora of child pornography.

{¶9} Appellant's counsel indicated that Appellant acknowledged his behavior and would like as much mental health assistance as possible.

{¶10} The trial court sentenced Appellant as follows: Counts 5 and 6 merge with Counts 3 and 4 for the purposes of sentencing. Count 1, 60 months in

prison; Count 2, 60 months in prison, Count 3, 18 months in prison; Count 4, 18 months in prison; Count 7, mandatory 15 years to life in prison; Count 8, mandatory 10 years to life in prison; Count 9, 8 years in prison; Count 10, 18 months in prison; Count 11, 12 months in prison; Count 12, 18 months in prison; Count 13, 180 days in prison; Count 14, 8 years in prison; and Count 15, 8 years in prison. The sentences were ordered to be served concurrently for an aggregate sentence of 15 years to life.

{¶11} Appellant did not file an appeal from his conviction or sentence. Instead, on October 29, 2020, Appellant filed a pro se motion to change his plea to not guilty and appoint new counsel. Appellant alleged he was under duress and not of sound mind due to extreme depression and anxiety when he signed his acknowledgment. He also alleged that he did not understand the evidence against him as his attorney did not go through the discovery documents with him. Appellant stated he was not guilty of the accusations.

{¶12} On November 30, 2020, the trial court held a hearing on the pro se request for Appellant to withdrawal [sic] his guilty plea. At the hearing, Appellant stated on the date of the plea and sentencing he was very shaken. He acknowledged that he discussed with counsel his plea, the rights he was waiving, and penalties he would be facing. Appellant stated he did not review the discovery provided by Appellee with his attorney. He stated he was suffering from anxiety and depression but was not under the influence of drugs or alcohol the day of sentencing. Appellant did not submit a professional report to substantiate his claim of suffering from depression, anxiety, or any other mental health condition likely to impair his ability to voluntarily, intelligently, and knowingly enter a plea of guilty. Appellant acknowledged he reviewed the evidence extracted from his electronic devices, that he knew the plea offer was for fifteen years to life, and thought he should not have plead guilty because it wasn't a fair deal.

{¶13} The trial court overruled Appellant's motion to withdrawal [sic] his post-sentence guilty plea.

*State v. Monaco*, 2021-Ohio-3888, 2021 WL 5049059, at **1-2 (Ohio Ct. App. Oct. 29, 2021).

## II.    Procedural History

**A.    Trial Court Proceedings**

On August 14, 2020, the Tuscarawas County Grand Jury indicted Monaco on the following charges: two counts of gross sexual imposition, in violation of O.R.C. §§ 2907.05(A)(4), 2907.05(C)(2) (Counts One and Two); two counts of gross sexual imposition, in violation of O.R.C. §§ 2907.05(A)(1), 2907.05(C)(1) (Counts Three and Four); two counts of sexual imposition, in violation of O.R.C. §§ 2907.06(A)(4),

4

2907.06(C) (Counts Five and Six); one count of kidnapping, in violation of O.R.C. §§ 2905.01(A)(4), 2905.01(C)(3) (Count Seven); one count of rape, in violation of O.R.C. §§ 2907.02(A)(1)(b), 2907.02(B) (Count Eight); one count of attempted rape, in violation of O.R.C. §§ 2923.02, 2907.02(A)(2), 2907.02(B) (Count Nine); one count of disseminating matter harmful to juveniles, in violation of O.R.C. §§ 2907.31(A)(1), 2907.31(F) (Count Ten); one count of disseminating matter harmful to juveniles, in violation of O.R.C. §§ 2907.31(A)(1), 2907.31(F) (Count Eleven); one count of disseminating matter harmful to juveniles, in violation of O.R.C. §§ 2907.31(A)(3), 2907.31(F) (Count Twelve); one count of disseminating matter harmful to juveniles, in violation of O.R.C. §§ 2907.31(A)(3), 2907.31(F) (Count Thirteen); and two counts of pandering obscenity involving a minor or impaired person, in violation of O.R.C. §§ 2907.321(A)(1), 2907.321(C) (Counts Fourteen and Fifteen).  (Doc. No. 19-1, Ex. 1.)

Monaco entered pleas of not guilty to all charges.  (Doc. No. 19-1, Ex. 2-3.)

On October 21, 2020, the trial court held a change of plea and sentencing.  (Doc. No. 19-1, Ex. 4.) Monaco entered a plea of guilty to the indictment.  (*Id.*)  The State presented to the court that Counts Three, Four, Five, and Six were allied offenses of similar import.  (*Id.*)  The State chose to proceed on Counts Three and Four for purposes of sentencing.  (*Id.*)  Monaco made a brief statement on his behalf.  (*Id.*)  The trial court sentenced Monaco to serve sixty months in prison on Count One, sixty months on Count Two, eighteen months on Count Three, eighteen months on Count Four, a mandatory indefinite term of fifteen years to life on Count Seven, a mandatory indefinite term of ten years to life on Count Eight, eight years on Count Nine, eighteen months on Count Ten, twelve months on Count Eleven, eighteen months on Count Twelve, one hundred eighty days on Count Thirteen, eight years on Count Fourteen, and eight years on Count Fifteen. (*Id.*)  The trial court ordered the sentences be served concurrently, for an aggregate sentence of fifteen years to life.  (*Id.*)

**B.     Motion for Change of Plea**

On October 29, 2020, the trial court received a letter from Monaco dated October 24, 2020.  (Doc. No. 19-1, Ex. 5, PageID# 168.)  In this letter, Monaco moved to change his plea to not guilty and for the appointment of new counsel.  (*Id.*)  As grounds, Monaco asserted he "was under duress due to [his] extreme depression and anxiety when [he] signed the Acknowledgment and was not of sound mind" and he "was not aware of the details/evidence read by the Prosecutor after [he] signed the paper."  (*Id.*)  Monaco stated that his attorney "never went over the discovery documents" with him before "convincing" Monaco to plead guilty.  (*Id.*)  Monaco told the court he was "not guilty of the accusations."  (*Id.*)

In an order dated November 2, 2020, the trial court construed the letter as a Motion for Change of Plea to Not Guilty, directed the letter be docketed and served on counsel, and set the matter for a hearing on November 30, 2020.  (Doc. No. 19-1, Ex. 5, at PageID# 166-67.)

On November 30, 2020, the trial court held a hearing on the Motion for Change of Plea to Not Guilty.  (Doc. No. 19-2 at PageID# 680, 682.)  On December 23, 2020, the trial court denied Monaco's Motion for Change of Plea to Not Guilty, finding Monaco failed to present evidence of a manifest injustice to support withdrawal of his guilty plea.  (Doc. No. 19-1, Ex. 6.)

**C.  Direct Appeal**

On January 5, 2021, Monaco, *pro se*, filed a motion for leave to file a delayed appeal with the Fifth District Court of Appeals and a notice of appeal.  (Doc. No. 19-1, Ex. 7-8.)  On February 22, 2021, the state appellate court granted Monaco's motion for leave to file a delayed appeal.  (Doc. No. 19-1, Ex. 9.)  The trial court granted Monaco's motion for appointment of counsel and appointed counsel to represent Monaco for his appeal.  (Doc. No. 19-1, Ex. 10.)  In his appellate brief, Monaco raised the following assignment of error:

> I.  THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING APPELLANT'S MOTION TO WITHDRAW PLEA.

(Doc. No. 19-1, Ex. 11.)  The State filed a brief in response.  (Doc. No. 19-1, Ex. 12.)

6

On October 29, 2021, the state appellate court affirmed Monaco's convictions.  (Doc. No. 19-1, Ex. 13.)  *See also State v. Monaco*, 2021-Ohio-3888, 2021 WL 5049059.

On January 4, 2022, Monaco, proceeding *pro se*, filed an untimely Notice of Appeal and motion for delayed appeal, along with an affidavit in support, with the Supreme Court of Ohio.  (Doc. No. 19-1, Ex. 14-15.)  The Supreme Court of Ohio granted Monaco's motion for leave to file a delayed appeal.  (Doc. No. 19-1, Ex. 16.)  In his Memorandum in Support of Jurisdiction, Monaco raised the following Propositions of Law:

I.      Trial shall be mandated in sex cases involving hearsay as the only evidence.

II.     Any case involving multiple first and second degree felonies must have an evidentiary hearing before any bargaining can take place.

(Doc. No. 19-1, Ex. 17.)  The State filed a response in opposition.  (Doc. No. 19-1, Ex. 18.)

On May 10, 2022, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct. Prac.R. 7.08(B)(4).  (Doc. No. 19-1, Ex. 19.)

On May 17, 2022, Monaco filed a motion for reconsideration.  (Doc. No. 19-1, Ex. 20.)

On July 19, 2022, the Ohio Supreme Court denied Monaco's motion for reconsideration.  (Doc. No. 19-1, Ex. 21.)

## C.     Post-Conviction Filings

On November 18, 2021, Monaco, through counsel, filed a Petition to Vacate and Set Aside Sentence. ("PCR Petition") (Doc. No. 19-1, Ex. 22.)  Monaco argued that his convictions were "void or voidable because he was denied the effective assistance of counsel, in violation of the United States Constitution and the Ohio Constitution."  (*Id.* at PageID# 291.)  Monaco asserted that counsel did not meet with him timely and did not review discovery with him.  (*Id.* at PageID# 291-92.)  In addition, Monaco averred that he had a mental health breakdown and was placed on suicide watch in September 2020.  (*Id.* at PageID# 292.)  Monaco argued that when he entered his guilty plea, he had not seen any discovery, he was unaware of the

7

evidence against him, and he chose to enter the plea because he feared his attorney was unprepared for trial. (*Id.*)  Monaco asserted that, as a result, his guilty plea in October 2020 "was not done with an understanding of what he was doing."  (*Id.*)  Monaco maintained that "[h]e knew that he was innocent of the charges against him but felt that he was on his own because of the actions of counsel and his failure to represent him."  (*Id.* at PageID# 293.)  In addition, Monaco argued that at the time his trial counsel was representing him, trial counsel "was being investigated by the Board of Professional Conduct for ethical violations."  (*Id.*)  As exhibits to his Petition, Monaco attached newspaper articles and a recommendation by the Board of Professional Conduct of the Ohio Supreme Court regarding his trial attorney's sexual relationship with a divorce client in an unrelated case.  (*Id.* at PageID# 304-45.)

On December 2, 2021, the trial court denied Monaco's PCR Petition. (Doc. No. 19-1, Ex. 23.)

On December 28, 2021, Monaco, through counsel, filed a notice of appeal with the Fifth District Court of Appeals.  (Doc. No. 19-1, Ex. 24.)  In his brief, Monaco raised the following two assignments of error:

> I.  THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED PETITIONER-APPELLANT MONACO'S TIMELY FILED PETITION FOR POSTCONVICTION RELIEF PURSUANT TO O.R.C. 2953.21 WITHOUT ISSUING FINDINGS OF FACT AND CONCLUSIONS OF LAW.
>
> II.  THE TRIAL COURT ERRED IN DENYING PETITIONER-APPELLANT MONACO'S POST-CONVICTION RELIEF PETITION WHERE HE PRESENTED SUFFICIENT EVIDENCE DEHORS THE RECORD TO MERIT AN EVIDENTIARY HEARING.

(Doc. No. 19-1, Ex. 25.) The State filed a motion for remand for findings of fact and conclusions of law. (Doc. No. 19-1, Ex. 26.)  On March 8, 2022, Monaco filed a motion for remand for hearing and findings of fact and conclusions of law.  (Doc. No. 19-1, Ex. 27.)

On March 18, 2022, the state appellate court issued a judgment entry stating that the "appellate rules do not permit the parties to agree to reverse the trial court and do not permit a summary disposition of an

appeal in this manner. The motion is taken under advisement, and the panel will issue a decision while conducting merit review of the case." (Doc. No. 19-1, Ex. 28.)

On April 6, 2022, the State filed its appellee brief. (Doc. No. 19-1, Ex. 29.)

On July 5, 2022, the state appellate court issued an opinion and judgment entry sustaining Monaco's first assignment of error. (Doc. No. 19-1, Ex. 30.) The state appellate court reversed and remanded the case to the trial court to make findings of fact and conclusions of law. (*Id.*)

On August 3, 2022, the State filed a response to Monaco's Petition for Post-Conviction Relief. (Doc. No. 19-1, Ex. 33.)

On August 11, 2022, Monaco filed a motion to allow him the opportunity to reply to the State's response in opposition (Doc. No. 19-1, Ex. 34), which the trial court granted. (Doc. No. 19-1, Ex. 35.) On September 2, 2022, Monaco filed his reply. (Doc. No. 19-1, Ex. 36.)

On June 22, 2023, the trial court issued a judgment entry that included findings of fact and conclusions of law in compliance with the remand from the state appellate court. (Doc. No. 19-1, Ex. 37.) The trial court found: (1) Monaco failed to meet his burden of proof as there was "no credible evidence" showing Monaco was denied the effective assistance of counsel; (2) Monaco failed to present "any credible evidence to suggest that the defects complained of caused his plea to be less than knowingly, intelligently, and voluntarily made"; (3) Monaco's "claim that his plea was involuntary because he was of unsound mind is barred by the doctrine of res judicata and not supported by the evidence"; and (4) the court lacked the authority to grant Monaco's request for discovery. (*Id.* at PageID# 507.) The trial court dismissed Monaco's PCR Petition without a hearing. (*Id.*)

On July 20, 2023, Monaco, through counsel, filed a timely notice of appeal with the Fifth District Court of Appeals. (Doc. No. 19-1, Ex. 38.) In his appellate brief, Monaco raised the following two assignments of error:

  I.  THE TRIAL COURT ABUSED ITS DISCRETION WHEN THE TRIAL COURT DENIED PETITIONER-APPELLANT MONACO'S TIMELY FILED PETITION FOR POSTCONVICTION RELIEF PURSUANT TO O.R.C. 2953.21 BY FINDING THAT IT WAS BARRED BY THE DOCTRINE OF RES JUDICATA.

  II.  THE TRIAL COURT ERRED IN DENYING PETITIONER-APPELLANT MONACO'S POSTCONVICTION RELIEF PETITION WHERE HE PRESENTED SUFFICIENT EVIDENCE DEHORS THE RECORD TO MERIT AN EVIDENTIARY HEARING.

(Doc. No. 19-1, Ex. 39.)  The State filed a brief in response.  (Doc. No. 19-1, Ex. 40.)

On February 13, 2024, the state appellate court affirmed the trial court's dismissal of Monaco's PCR Petition.  (Doc. No. 19-1, Ex. 41.)

On March 28, 2024, Monaco, through counsel, filed a notice of appeal with the Supreme Court of Ohio.  (Doc. No. 19-1, Ex. 42.)  In his memorandum in support of jurisdiction, Monaco raised the following proposition of law:

  I.  THE TRIAL COURT ERRED WHEN IT FOUND THAT RES JUDICATA APPLIED TO AN UNDERLYING CLAIM OF INEFFECTIVE ASSISTANCE, AND IN SO FINDING DETERMINED THAT APPELLANT WAS NOT ENTITLED TO A HEARING.

(Doc. No. 19-1, Ex. 43.)

On June 11, 2024, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4).  (Doc. No. 19-1, Ex. 44.)

**D.** **Application to Reopen Appeal under Ohio App. R. 26(B)**

On December 13, 2021, Monaco filed a *pro se* Application to Reopen Appeal Pursuant to Ohio App. R. 26(B).  (Doc. No. 19-1, Ex. 31.)  Monaco's Application argued that appellate counsel was ineffective for failing to raise the following arguments on direct appeal:

  I.  The Trial Court abused its discretion when it denied the Defendant his 5th Amendment Right to Due Process when it failed to appoint new counsel upon request.

II.    The Trial Court erred when it failed to ensure that the defendants [sic] 6th amendment right to be fully informed of the nature and cause of the accusations were not infringed.

III.    The Trial Court erred when it deprived the defendant of his 6th Amendment Right to effective assistance of counsel.

IV.    The Trial Court abused its discretion when it allowed prior defense counsel Kevin Cox to continue to represent the defendant and committed overreach in doing so.

V.    The Trial Court erred when it failed to prove that the defendants [sic] Ohio Constitutional Rights in Art. I, § 10, Part 1 of 3 were not violated.

(*Id.* at PageID# 410.)

On January 13, 2022, the state appellate court overruled Monaco's Application to Reopen, finding Monaco had "failed to demonstrate appellate counsel's performance fell below an objective standard of reasonable representation" and "did not demonstrate he was prejudiced by appellate counsel's representation as required by *Strickland* and *Bradley*." (Doc. No. 19-1, Ex. 32, PageID# 426-27.)

On February 23, 2022, Monaco, *pro se*, filed a timely notice of appeal with the Supreme Court of Ohio. (Doc. No. 19-1, Ex. 32-A.)  In his memorandum in support of jurisdiction, Monaco raised the following propositions of law:

I.    Appellate Counsel failed to argue; "The Trial Court abused its discretion when it denied the Defendant his 5th Amendment Right to Due Process when it failed to appoint new counsel upon request, a 6th Amendment Right."

II.    The Appellate Counsel failed to argue; "The Trial Court erred when it failed to ensure that the defendants [sic] 6th Amendment Right to be fully informed of the nature and cause of the accusations were not infringed."

III.    The Appellate Counsel failed to argue; "The Trial Court erred when it deprived the defendant of his 6th Amendment Right to effective assistance of counsel."

IV.    The Appellate Counsel failed to argue; "The Trial Court abused its discretion when it allowed prior defense counsel Kevin Cox to continue to represent the defendant and committed overreach in doing so."

V.    The Appellate Counsel failed to argue; "The Trial Court erred when it failed to prove that the defendants [sic] Ohio Constitutional Rights in Art. I, § 10, Part 1 of 3 were not violated."

11

(Doc. No. 19-1, Ex. 32-B.)

On May 10, 2022, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to

S.Ct.Prac.R. 7.08(B)(4).  (Doc. No. 19-1, Ex. 32-C.)

On May 17, 2022, Monaco filed a motion for reconsideration.  (Doc. No. 19-1, Ex. 32-D.)

On July 19, 2022, the Ohio Supreme Court denied Monaco's motion for reconsideration. (Doc. No.

19-1, Ex. 32-E.)

## E.     Federal Habeas Petition

On July 1, 2024,[1] Monaco filed a Petition for Writ of Habeas Corpus in this Court and asserted the

following grounds for relief:

> **GROUND ONE**:  Ineffective Assistance of Appellate Counsel in violation of the 6th
> Amendment of the United States Constitution.
>
> > **Supporting Facts**:  Failed to argue an obvious conflict of interest (Kevin Cox's
> > representation during withdrawal of plea hearing); Failed to argue a direct denial of
> > counsel by the court (withdrawal of plea hearing); Failed to argue a complete
> > breakdown of attorney client relationship (Kevin Cox and Mr. Monaco);
> > Demonstrated constructive denial of counsel (failed to send requested and required
> > documents); Failed to properly investigate his clients [sic] case and act in his
> > client's best interest; Overlooked an obviously coerced plea resulting in manifest
> > injustice.
>
> **GROUND TWO**:   Ineffective Assistance of Trial Counsel in Violation of the 6th
> Amendment of the United States Constitution.
>
> > **Supporting Facts**:  Used fear and intimidation to coerce plea; Conflict of interest;
> > A complete breakdown of attorney-client relationship; had multitudes of
> > exculpatory evidence he didn't bother to investigate nor present including
> > character witnesses; Did not share discovery with client; Acted as an agent of the
> > State; Did not file a single motion; did not look into postponing trial due to his
> > clients [sic] mental state; Did not act in his clients [sic] best interest; Demonstrated
> > constructive denial of counsel; Told his client he had no choice but to plea and
> > used wife to coerce a plea; Utilized fabricated evidence to coerce plea; Told

---

[1]  Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner delivers it to prison
authorities. *See Houston v. Lack*, 487 U.S. 266 (1988).  While the Petition herein did not arrive at the Court
for filing until July 16, 2024, Monaco states that he placed it in the prison mailing system on July 1, 2024.
(Doc. No. 1 at 19.)  Thus, the Court will consider the Petition as filed on July 1, 2024.

petitioner he was being railroaded and it was political for the Judge; lied to client; Innocence.

**GROUND THREE**:  Direct Denial of Due Process through Coercion of a Plea In Violation of the 5th and 14th Amendments of the United States Constitution.

**Supporting Facts**:  Fear and intimidation used to coerce plea; Plea was coerced while defendant was in a mentally unstable position; Plea was coerced while defendant was under the influence of a mind altering substance thereby impairing his cognitive abilities; Plea was coerced with the use of fabricated evidence.

**GROUND FOUR**:  Constructive Denial of Counsel in Violation of the 6th amendment of the United States Constitution.

**Supporting Facts**:  1. Trial counsel acted as an agent of the state during withdrawal hearing; 2. Did not interview, comment, nor object to any of the deliberations and interogations [sic] of his client during the hour and a half withdrawal of plea hearing until the end when he teamed up with prosecutor and judge; Malicious prosecution; Argued for the state concerning the fabricated evidence of files allegedly found on computer [breach of contract]. Operated under conflict of interest as he was accused of ineffectiveness; Did not investigate clients [sic] mental health status, did not subpoena medical records.

**GROUND FIVE:**  Direct Denial of Counsel by the Trial Court in Violation of the 6th Amendment of the United States Constitution.

**Supporting Facts**:  First ¶ of handwritten motion to withdraw requests appointment of counsel; Counsel of choice not given under a direct conflict of interest that is shown in the record; A complete breakdown of attorney client relationship which is clear and apparent in the transcript from hearing; Petitioner filed on his own three days after plea when he could calm down, clearly severing ties with his paid attorney; was appointed David Blackwell prior to Kevin Cox, of whom wife picked and hired Kevin.

**GROUND SIX**:  Denial of 6th Amendment Right to a Fair Trial of the United States Constitution.

**Supporting Facts**:  Hereby incorporating previous claims 1 through 5; Judicial bias - unachievable bond, biased assumptions stating "abuse took place over 10 years, bond will not be reduced" [All clear and present in the record]; coerced into plea; not allowed to withdraw plea by same Judge; Bias shown in PCR, one page denial that was reversed; bias shown in delayed findings; Judge was politically motivated to prosecute case - rushed through in 75 days right before election with her own husband on the ballot for other common pleas seat in conflict of interest.

(Doc. No. 1.)

On August 7, 2024, Monaco filed a motion for appointment of counsel.  (Doc. No. 5.)

On August 29, 2024, Monaco sought leave to file a legal memorandum in support of his claims. (Doc. No. 8.)

On September 5, 2024, the Court granted Monaco leave to file a legal memorandum in support of his claims that did not exceed ten pages.  (Non-document Order dated September 5, 2024.)

On September 10, 2024, Monaco filed a motion for leave of Court to conduct discovery.  (Doc. No. 10.)

On September 25, 2024, Warden Jay Forshey ("Respondent") filed a response in opposition to Monaco's motion to conduct discovery.  (Doc. No. 11.)

On October 1, 2024, Monaco filed his legal memorandum in support of his claims.  (Doc. No. 12.)

On October 4, 2024, Respondent sought an extension of time to file the Return of Writ (Doc. No. 13), which the Court granted.  (Non-document Order dated October 4, 2024.)

On October 8, 2024, Monaco filed his reply in support of his motion for leave to conduct discovery. (Doc No. 14.)

On October 30, 2024, the Court denied Monaco's motion for appointment of counsel and motion to proceed *in forma pauperis*.  (Doc. Nos. 16-17.)

That same day, the Court denied Monaco's motion for leave to conduct discovery.  (Doc. No. 18.)

On November 7, 2024, Respondent filed the Return of Writ.  (Doc. No. 19.)

On November 26, 2024, Monaco sought an extension of time to file his Traverse (Doc. No. 20), which the Court granted.  (Non-document Order dated November 26, 2024.)

On December 17, 2024, Monaco filed his second motion for leave of Court to conduct discovery. (Doc. No. 21.)

On December 24, 2024, Respondent filed a response in opposition to Monaco's second motion for leave of Court to conduct discovery.  (Doc. No. 22.)

14

On January 2, 2025, Monaco filed his Traverse. (Doc. No. 23.)

On January 6, 2025, Monaco filed his reply in support of his second motion for leave of Court to conduct discovery. (Doc. No. 24.)

### III. Exhaustion and Procedural Default

**A.    Legal Standard**

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b), (c). This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir.1990).

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)). A claim may become procedurally defaulted in two ways. *Id.* First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.; see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[2] *Id.*

---

[2] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138–39; *Barkley v. Konteh*, 240 F. Supp.2d 708 (N.D. Ohio 2002). "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)." *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac,* 456 U.S. 107, 125 n.28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731–32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Lovins*, 712 F.3d 283, 295 (6th Cir. 2013) ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.")  This second type of procedural default is often confused with exhaustion.  Exhaustion and procedural default, however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n.28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id*.  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal.  *Id.*  Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted.  *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue-not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional

---

last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

claim: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138–39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.* Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See United States v. Frady*, 456 U.S. 152, 172, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219–20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman v. Thompson*, 501 U.S.722, 749–50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). *See also Allen v. Harry*, 497 F. App'x 473, 480 (6th Cir. 2012).

**B.    Application to Petitioner**

**1.    Ground One**

In Ground One, Monaco argues ineffective assistance of appellate counsel based on the following: (1) failure to argue an obvious conflict of interest (trial counsel's representation during withdrawal of plea hearing); (2) failure to argue a direct denial of counsel by the court (withdrawal of plea hearing); (3) failure to argue a complete breakdown of attorney client relationship (trial counsel and Monaco); (4) demonstrated constructive denial of counsel (failed to send requested and required documents); (5) failure to properly investigate his client's case and act in his client's best interest; and (6) overlooked an obviously coerced plea resulting in manifest injustice.  (Doc. No. 1 at 5.)

Respondent argues that Monaco fairly presented Ground One to the state courts.  (Doc. No. 19 at 16.)

"In Ohio, claims of ineffective assistance of appellate counsel are not cognizable in the normal course of post-conviction proceedings, and must be raised through an application to reopen the direct appeal pursuant to Ohio Rule of Appellate Procedure 26(B)." *Carter v. Mitchell,* 693 F.3d 555, 564 (6th Cir. 2012). While Monaco filed a 26(B) Application, he argued appellate counsel was ineffective for failing to raise five assignments of **trial court error** on direct appeal, in addition to failing to request "an evidentiary hearing allowing subpoena of medical records from the Jail," failing to request an oral hearing in Monaco's defense, and failing to correct "several misstated facts" in reply to the State's appellate brief.  (Doc. No. 19-1, Ex. 31, at PageID# 411-15.)  The Sixth Circuit has held "'that the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court.'" *Williams v. Bagley*, 380 F.3d 932, 969 (6th Cir. 2004) (quoting *Wong v. Money,* 142 F.3d 313, 322 (6th Cir.1998)).  Relatedness of the issues between a claim presented to the state courts and one not presented to the state courts will not save the unpresented claim.  *Lott v. Coyle*, 261 F.3d 594, 607 (6th Cir. 2001).

18

Reading Monaco's *pro se* filings broadly, the Court finds Monaco fairly presented the following claims to the state courts: (1) failure to argue a direct denial of counsel by the court and (2) failure to properly investigate his client's case and act in his client's best interest. Monaco's other claims of ineffective assistance of appellate counsel are procedurally defaulted.

### a. Cause and Prejudice

Monaco may nevertheless obtain a merits review of the procedurally defaulted claims if he can demonstrate cause for the default and prejudice resulting therefrom, or that failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren*, 440 F.3d at 763.

As Respondent failed to argue Ground One was procedurally defaulted, Monaco raises no argument regarding cause and prejudice. The Court's review of the record reveals no basis for cause. The Court notes a petitioner's *pro se* status or lack of legal training is insufficient to establish cause to excuse the procedural default of his ineffective assistance of counsel claims. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004).

As Monaco fails to show cause, the Court need not consider the prejudice prong. *Smith v. Murray*, 477 U.S. 527, 533–34 (1986).

### b. Actual Innocence

Because the cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice, the United States Supreme Court has recognized a narrow exception to the cause requirement where a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense. *Dretke v. Haley*, 541 U.S. 386, 124 S.Ct. 1847, 158 L.Ed.2d 659 (2004) (citing *Carrier*, 477 U.S. at 495–96); *see also Schlup*, 513 U.S. at 327 (1995). Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623–24, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). To be credible, such a claim requires the petitioner to support his allegations of constitutional error with new and reliable evidence that was not presented at trial. *Schlup*, 513 U.S. at 324;

19

*see also Gulertekin v. Tinnelman–Cooper*, 340 F.3d 415, 427 (6th Cir. 2003). Absent new evidence of innocence, "even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Schlup*, 513 U.S. at 316.

Here, Monaco does not identify any new, reliable evidence of his actual innocence.[3] The Court finds Monaco has not demonstrated he is entitled to the actual innocence exception.

### 2. Ground Two

In Ground Two, Monaco argues he received ineffective assistance of trial counsel on the following grounds: (1) counsel used fear and intimidation to coerce a plea; (2) conflict of interest; (3) a complete breakdown of the attorney-client relationship; (4) counsel had multitudes of exculpatory evidence that counsel failed to investigate or present, including character witnesses; (5) counsel did not share discovery with Monaco; (6) counsel acted as an agent of the State; (7) counsel did not file a single motion; (8) counsel did not look into postponing the trial due to Monaco's mental state; (9) counsel did not act in Monaco's best interest; (10) constructive denial of counsel; (11) counsel told Monaco he had no choice but to plead and used Monaco's wife to coerce a plea; (12) counsel utilized fabricated evidence to coerce a plea; (13) counsel told Monaco he was being railroaded and the matter was political for the judge; (14) counsel lied to Monaco;

---

[3] Furthermore, any such actual innocence claim is "'seriously undermine[d]' by his guilty plea." *Gay v. State*, No. 3:19-cv-00610, 2020 WL 1332405, at *3 (M.D. Tenn. Mar. 23, 2020) (quoting *Smith v. Warden*, Case No. 7:17CV00072, 2018 WL 3130948, at *2 (W.D. Va. June 26, 2018)). "In United States v. Broce, the Supreme Court of the United States held that by pleading guilty, 'the accused is not simply stating that [the accused] did the discrete acts described in the indictment; [the accused] is admitting guilt of a substantive crime.' 488 U.S. 563, 570, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989)." *Smith v. Warden*, 2018 WL 3130948, at *2. While Monaco challenges the validity of his guilty plea, "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

(15) Monaco was innocent; and (16) counsel failed to defend Monaco at sentencing.  (Doc. No. 1 at 7; Doc. No. 12 at 6.)

Respondent argues that Monaco fairly presented the following claims of ineffective assistance of trial counsel to the state courts: (1) coercion of a plea; (2) counsel failed to review discovery with Monaco; and (3) counsel failed to act in Monaco's best interest.  (Doc. No. 19 at 17.)  Respondent asserts that all other subclaims presented in Ground Two are procedurally defaulted, and Monaco cannot show cause and prejudice to excuse the default.  (*Id.* at 17, 19-20.)  Nor has Monaco presented new, reliable evidence to support a claim of actual innocence.  (*Id.* at 20-21.)

In his Traverse, Monaco argues that he fairly presented all of Ground Two's subclaims to the state courts.  (Doc. No. 23 at 14.)  Monaco asserts that regarding trial counsel's conflict of interest and the breakdown of the attorney-client relationship, the state appellate court's rejection of Monaco's 26(B) Application "was a clear misapplication of law and contrary to law."  (*Id.* at 13.)  Monaco states: "The Petitioner will 'show that decision was contrary to, or an unreasonable application of, clearly established law per U.S.C. § 2254(d)(1) based only on 'the record that was before the state court that adjudicated the claim on the merits.' *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).' (Doc. #18, page 3, PAGEID#62) in Grounds 1 & Ground 2, further detailed below."  (Doc. No. 23 at 13-14.)  Monaco argues that trial counsel's conflict of interest and ineffectiveness "was further argued with evidence *dehors* the record in Mr. Monaco's PCR, which detailed what is shown as a complete breakdown of attorney client relationship, and argued as such in subsequent Appeal."  (*Id.* at 14.)  Finally, Monaco maintains that "Ground two is not in procedural default, as it and all sub claims were also 'fairly presented' and either ruled on contrary to law, or otherwise not ruled on the merits."  (*Id.* at 16.)

Monaco's direct appeal consisted of a single claim: abuse of discretion by the trial court in denying Monaco's motion to withdraw his guilty plea.  (Doc. No. 19-1, Ex. 11 at PageID# 191.)  However, appellate

21

counsel argued as part of that assignment of error that "there are two primary issues": "a combined-error of whether Appellant was represented by highly competent counsel and whether Appellant understood the nature of the charges against him" and "whether Appellant was possibly not guilty." (*Id.* at PageID# 192.) Appellate counsel argued trial counsel had failed to educate Monaco as to the allegations against him or discuss discovery with Monaco, and trial counsel had not challenged the exhibits put forth by the State. (*Id.* at PageID# 192-93.)  In Monaco's *pro se* Memorandum in Support of Jurisdiction in his appeal to the Supreme Court of Ohio, Monaco argued the state appellate court "erred when it . . . missed 3 clear constitutional issues," including his Sixth Amendment right to effective assistance of counsel. (Doc. No. 19-1, Ex. 17 at PageID# 251.)  Monaco included trial counsel's failure to review discovery with Monaco and "fully educate" Monaco, and trial counsel's failure to defend against the accusations of the State. (*Id.* at PageID# 251-52.)  For the first time, Monaco argued a conflict of interest as the trial court allowed trial counsel to continue to represent Monaco when Monaco had alleged ineffective assistance of trial counsel before the hearing.[4]  (*Id.* at PageID# 251.)

In his PCR Petition, Monaco, through counsel, argued that Monaco's convictions were "void or voidable" on the basis of ineffective assistance of counsel based on the following: trial counsel failed to discuss discovery with Monaco or the evidence against him; Monaco entered a guilty plea because he was afraid trial counsel was unprepared for trial; when Monaco entered his guilty plea, he was suffering from mental health issues and anxiety, was taking medication, and did not understand what he was doing; Monaco knew he was innocent but "felt that he was on his own because of the actions of counsel and his failure to

---

[4] "[U]nder Ohio law, a constitutional question cannot ordinarily be raised before the Ohio Supreme Court unless it was first presented to the intermediate appellate court." *Reed v. Jenkins*, Case No. 3:15-cv-00620, 2016 WL 6311235, at *6 (N.D. Ohio June 22, 2016) (citations omitted), *report and recommendation adopted by* 2016 WL 6393350 (N.D. Ohio Oct. 27, 2016).  As the Sixth Circuit has explained, "'The Ohio Supreme Court has stated that it will not consider constitutional claims not raised and preserved in the Ohio Court of Appeals.'"  *Leroy v. Marshall*, 757 F.2d 94, 99 (6th Cir. 1985) (quoting *Fornash v. Marshall,* 686 F.2d 1179, 1185 n.7 (6th Cir.1982) (additional internal citations omitted).

represent him"; when counsel was representing Monaco, trial counsel was being investigated by the Board of Professional Conduct for ethical violations, and trial counsel's preoccupation with this matter resulted in trial counsel's failure "to provide effective representation in a case involving a life sentence." (Doc. No. 19-1 Ex. 22 at PageID# 291-93.) In his reply in support of his PCR Petition, Monaco argued that trial counsel failed to act in his best interest when trial counsel represented Monaco during the hearing on the motion to withdraw after Monaco had accused trial counsel of ineffective assistance; "[r]ather than being an advocate for Mr. Monaco, counsel had every incentive to protect himself, and completely fail to look after the best interests of the client." (Doc. No. 19-1, Ex. 36, at PageID# 489.) Monaco appealed the denial of his PCR Petition to the state appellate court and the Supreme Court of Ohio. (Doc. No. 19-1, Ex. 39; Doc. No. 19-1, Ex. 42.) In his appeal to the Supreme Court of Ohio, Monaco, through counsel, argued for the first time that counsel was "ineffective due to a complete failure and breakdown in the attorney client relationship." (Doc. No. 19-1, Ex. 43, at PageID# 604.)[5]

In his 26(B) Application, Monaco argued that he received ineffective assistance of appellate counsel when appellate counsel failed to argue that the "Trial Court erred when it deprived the defendant of his 6th Amendment Right to effective assistance of counsel" and that the "Trial Court abused its discretion when it allowed prior defense counsel Kevin Cox to continue to represent the defendant and committed overreach in doing so." (Doc. No. 19-1, Ex. 31, at PageID# 410.) Monaco argued appellate counsel should have requested an evidentiary hearing to get a subpoena for medical records from the jail, which trial counsel should have done as well. (*Id.* at PageID# 413.) Monaco asserted that the records would have shown he was depressed, suicidal, and experiencing hallucinations, as well as the psychotropic medications he was taking at the time. (*Id.*) Monaco also argued that appellate counsel was ineffective for failing to argue that the trial court abused its discretion to allow trial counsel to represent Monaco after Monaco accused trial

---

[5] *See* n.4, *supra*.

counsel of ineffective assistance of counsel, creating a conflict of interest.  (*Id.* at PageID# 414.)  Monaco appealed the denial of his 26(B) Application to the Supreme Court of Ohio.  (Doc. No. 19-1, Ex. 32-A, 32-B.)

The Court notes that while Monaco raised ineffective assistance of appellate counsel claims relating to appellate counsel's failure to raise certain arguments relating to trial counsel on direct appeal, it is well-established that "bringing an ineffective assistance claim in state court based on counsel's failure to raise an underlying claim does not preserve the underlying claim for federal habeas review because the two claims are analytically distinct."  *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008).  As another district court within this Circuit has explained:

> [U]nder Ohio law, an application for reopening pursuant to App. R. 26(B), or a "Murnahan" motion, is a procedural mechanism for raising claims of appellate counsel ineffectiveness, not for bootstrapping underlying constitutional claims that were omitted from the direct appeal in the first place.  Fair presentment requires a petitioner to present his claims to the state courts in a procedure and manner that will provide the state courts with the opportunity to apply controlling legal principles.  *Picard v. Connor*, 404 U.S. 270, 276–77, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).  To the extent petitioner is suggesting that raising a claim in a Rule 26(B) application is equivalent to raising that claim on direct appeal, he is in error.  The notion that any constitutional claim raised in an application for reopening is fairly presented to the state courts in the same manner as if that claim had been raised in a timely direct appeal is untenable and unsupported by case law.  The only claims that can be preserved in a Rule 26(B) application for reopening, therefore, are claims of ineffective assistance of appellate counsel.

*Stojetz v. Ishee*, 389 F. Supp. 2d 858, 898–99 (S.D. Ohio 2005).  *See also Wogenstahl v. Mitchell*, 668 F.3d 307, 343 (6th Cir. 2012); *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005); *Enyart v. Coleman*, 29 F. Supp. 3d 1059, 1098 (N.D. Ohio 2014); *White v. Shewalter*, Case No. 1:10CV1265, 2012 WL 2711463, at *10 (N.D. Ohio March 14, 2012), *report and recommendation adopted by* 2012 WL 2741551 (July 9, 2012).  Thus, Monaco's 26(B) Application did not preserve his underlying ineffective assistance of trial counsel claims.

In addition, the Sixth Circuit has held "'that the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court.'" *Williams v. Bagley*, 380 F.3d 932, 969 (6th Cir. 2004) (quoting *Wong v. Money,* 142 F.3d 313, 322 (6th Cir.1998)). Relatedness of the issues between a claim presented to the state courts and one not presented to the state courts will not save the unpresented claim. *Lott v. Coyle*, 261 F.3d 594, 607 (6th Cir. 2001).

Based on the Court's review of the record, the Court finds Monaco fairly presented the following claims related to ineffective assistance of trial counsel: (1) conflict of interest during plea withdrawal hearing; (2) failure to share discovery with Monaco; (3) failure to act in Monaco's best interest; and (4) coercion of a guilty plea.[6]  The Court finds the remainder of the claims to be procedurally defaulted.

### c.    Cause and Prejudice

Monaco may nevertheless obtain a merits review of the procedurally defaulted claims if he can demonstrate cause for the default and prejudice resulting therefrom, or that failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren*, 440 F.3d at 763.

In his Traverse, Monaco alludes to ineffective assistance of appellate counsel as cause to excuse his procedural default, arguing that the state appellate court's rejection of Monaco's 26(B) Application "was a clear misapplication of law and contrary to law."  (Doc. No. 23 at 13.)

The Sixth Circuit has held that cause to excuse the procedural default of a habeas claim may exist if a petitioner's appellate counsel was ineffective in failing to raise the issue.  *See Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013); *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004); *Smith v. Ohio, Dept. of Rehab. and Corr.*, 463 F.3d 426, 432 (6th Cir. 2006); *Berry v. Warden, Southern Ohio Corr. Facility*,

---

[6] Respondent argues that while Monaco did not use the word "coercion" in his PCR Petition, he attached an exhibit to his PCR Petition informing the court in part that his "attorney never went over the discovery documents with [him] prior to convincing [him] to pleading guilty."  (Doc. No. 19 at 17 n.8.)  Respondent then concedes that Monaco fairly presented his coercion claim.  In light of Respondent's argument and concession, the Court shall consider this argument fairly presented.

3:14CV2518, 2016 WL 4177174, at *3 (N.D. Ohio Aug. 8, 2016).  However, the underlying claim of ineffective assistance of counsel must in and of itself not be in default.  *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) (finding unless the state prisoner can satisfy the cause and prejudice standard for the procedurally defaulted ineffective assistance of counsel claim, that claim cannot serve as cause for another procedurally defaulted claim).  As set forth above, in his 26(B) Application, Monaco argued appellate counsel was ineffective for failing to raise five assignments of error based on **trial court error**.  All of Monaco's claims of ineffective assistance of appellate counsel based on anything beyond the five assignments of trial court error in his 26(B) Application are themselves procedurally defaulted and cannot serve as cause to excuse the procedural default.

Even assuming *arguendo* that Monaco's five assignments of trial court error could be read to encompass claims of ineffective assistance of appellate counsel for failure to argue ineffective assistance of trial counsel, a petitioner cannot show that appellate counsel was ineffective for failing to raise a claim on appeal if the underlying claim itself lacks merit.  *See Moore*, 708 F.3d at 776; *Davie*, 547 F.3d at 312; *Berry*, 2016 WL 4177174, at *3. Thus, if a state court rejects an ineffective assistance of appellate counsel claim on the merits, a petitioner's default may not be excused on the basis of appellate counsel's failure to raise the underlying claim on direct appeal.  *See Moore*, 708 F.3d at 776–777 ("Moore cannot show ineffective assistance of his appellate counsel for failing to raise the issue on appeal because the underlying claim lacks merit. *Davie*, 547 F.3d at 312. The state court did not unreasonably apply *Strickland* in so holding. The claim is procedurally defaulted and that default is unexcused."); *Berry*, 2016 WL 4177174, at *3.

The state appellate court considered Monaco's claims of ineffective assistance of appellate counsel regarding appellate counsel's failure to argue trial court error based on ineffective assistance of trial counsel on the merits as set forth in his App. R. 26(B) Application and rejected them as follows:

26

In Appellant's Third Assignment of Error, Appellant argues his attorney should have argued the trial court [sic] was ineffective for not requesting an evidentiary hearing to subpoena Appellant's medical records. We disagree.

A properly licensed attorney is presumed competent. *State v. Hamblin,* 37 Ohio St.3d 153, 524 N.E.2d 476 (1988). Our standard of review is set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Ohio adopted this standard in the case of *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel. First, we must determine whether counsel's assistance was ineffective; whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the trial would have been different. *Id.*

Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie* (1998), 81 Ohio St.3d 673, 675, 693 N.E.2d 267. In addition, the United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Bradley* at 143, 538 N. E.2d 373, quoting *Strickland* at 697, 104 S.Ct. 2052. Even debatable trial tactics and strategies do not constitute ineffective assistance of counsel. *State v. Clayton,* 62 Ohio St.2d 45, 402 N.E.2d 1189 (1980).

Appellant argues in his Application to Reopen that his medical records would have shown he was depressed, suicidal, and having hallucinations. However, Appellant has failed to properly introduce any corroborating evidence supporting his self-serving claim that he was mentally incompetent to enter a plea of guilty.

Based on the foregoing, we do not find that "there is a reasonable probability that, but for [trial] counsel's errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. As Appellant has not demonstrated ineffective assistance of trial counsel, he has not demonstrated appellate counsel was ineffective in failing to raise this assignment of error on direct appeal.

IV

In Appellant's Fourth Assignment of Error, Appellant argues the trial court abused its discretion when it allowed prior defense counsel to continue to represent Appellant. We disagree.

27

> Appellant cites no legal authority to support his position. Appellant also fails to cite any specific instances in the transcript of how the trial court shifted the burden of proof or compelled Appellant to take the stand. As such, Appellant has not demonstrated ineffective assistance of counsel for failing to raising this assignment of error on direct appeal.

(Doc. No. 19-1, Ex. 32, at PageID# 424-26.)

In order to determine whether a claim of ineffective assistance of appellate counsel may serve to excuse the procedural default of the underlying claim, a district court may look to the strength of the underlying claim. *See Davie*, 547 F.3d at 312; *Moore*, 708 F.3d at 778; *Manoku v. Lafler*, 2015 WL 4715768 at * 17 (E.D. Mich. Aug. 7, 2015). Because the state appellate court in the instant case ruled on the merits, its decision is entitled to AEDPA deference. *See Moore*, 708 F.3d at 778; § 2254(d)(1).

In assessing claims of ineffective assistance of counsel, courts apply the familiar standard of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1998), which requires a petitioner to demonstrate both that his counsel's performance was deficient, and that the allegedly ineffective assistance caused him prejudice:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687. This standard applies "regardless of whether a [p]etitioner is claiming ineffective assistance of trial counsel or ineffective assistance of appellate counsel." *Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005).

Where, as here, a state court correctly identifies *Strickland* as the standard for assessing a petitioner's ineffective assistance claim, in order for the petitioner to receive habeas relief, the state court's ruling must

be an unreasonable application of the *Strickland* standard.  *Knowles v. Mirzayance*, 556 U.S. 111, 123, 129 S.Ct. 1411, 173 L.Ed.2d 251 (2009) ("The question is not whether a federal court believes the state court's determination under *Strickland* was incorrect but whether that determination was unreasonable—a substantially higher threshold.") (internal quotation marks omitted).  When reviewing a state court's ruling on an ineffective assistance of counsel claim, federal habeas courts must employ "a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, —— U.S. ——, 134 S.Ct. 10, 13, 187 L.Ed.2d 348 (2013); *see also Cullen v. Pinholster*, 563 U.S. 170, 131 S.Ct. 1388, 1403, 179 L.Ed.2d 557 (2011) ("Our review of the [state court's] decision is thus doubly deferential. We take a highly deferential look at counsel's performance through the deferential lens of § 2254(d).") (internal citations and quotation marks omitted).

The Court finds the state appellate court reasonably rejected Monaco's claim that appellate counsel was ineffective for failing to argue trial court error based on ineffective assistance of trial counsel.  As the state appellate court found, Monaco "failed to properly introduce any corroborating evidence supporting his self-serving claim that he was mentally incompetent to enter a plea of guilty."  (Doc. No. 19-1, Ex. 32, at PageID# 425.)  A review of the transcript of the October 21, 2020 change of plea hearing reveals Monaco was capable of answering questions posed by the trial court both during the plea colloquy and throughout the remainder of the change of plea hearing.  (Doc. No. 19-2.)  A review of the transcript of the November 30, 2020 hearing on the motion to withdraw the guilty plea reveals that Monaco testified as to his mental state and his medications preceding the guilty plea and his mental state during the October 21, 2020 hearing.  (Doc. No. 19-2 at PageID# 695-98.)  Monaco admitted he told the doctor at the jail on September 21, 2020 that he was no longer having suicidal thoughts.  (*Id.* at PageID# 695.)  Monaco further admitted he had not been seen by a doctor at the jail since September 21, 2020, although Monaco testified there should have been additional mental health requests as he had told trial counsel he needed help on several occasions.  (*Id.*

at PageID# 696.)  Monaco further admitted he had no medical records showing he was of unsound mind on October 21, 2020, although he testified that he had asked to be evaluated several times.  (*Id.* at PageID# 707.)

Monaco also admitted to an hour-long record telephone call with his daughter, although Monaco testified that he had "had a few drinks" and there were "two sides to that conversation" and it was not as it seemed.  (*Id.* at PageID# 688-89.)  Monaco also admitted to secretly recording his teenage daughter in the shower, although Monaco testified that he had done so to catch his daughter using his wife's toiletries, which his daughter had lied about doing.  (*Id.* at PageID# 693.)  When given an opportunity to make a statement on his behalf at the sentencing hearing, Monaco stated, "I need help. That's all I can say. I'm sorry for harming anybody, especially my daughter. I'm sorry. God help me. There's nothing further your honor." (*Id.* at PageID# 671.)

Under the double deferential standard, the Court finds that the state appellate court's rejection of Monaco's ineffective assistance of appellate counsel claim based on appellate counsel's failure to argue trial court error based on ineffective assistance of trial counsel was reasonable.  Accordingly, and because the state court reasonably determined Monaco's appellate counsel was not ineffective, the Court finds Monaco has not satisfied the cause requirement to overcome the procedural default of these Ground Two subclaims. *See e.g., Moore,* 708 F.3d at 778 ("That procedural default is not excused because even if his appellate counsel had raised the issue, the underlying claim was meritless."); *Warren v. Smith*, Case No. 1:09CV1064, 2010 WL 2837001, at *9 (N.D. Ohio Apr. 29, 2010) (finding petitioner did not establish cause to excuse the default of habeas claim because state appellate court considered petitioner's 26(B) Application on the merits and determined appellate counsel was not deficient for failing to raise issue on direct appeal).

In the absence of cause, a court need not reach the issue of prejudice. *See Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000); *Sandridge v. Buchanan*, 1:16CV2299, 2017 WL 2255378, at *11 (N.D. Ohio April 27, 2017).

Accordingly, and for all the reasons set forth above, the Court finds Monaco has failed to establish cause and prejudice to excuse the default of these Ground Two subclaims.

As set forth above, in the absence of cause, a court need not reach the issue of prejudice.

### d. Actual Innocence

Here, Monaco does not identify any new, reliable evidence of his actual innocence.[7] The Court finds Monaco has not demonstrated he is entitled to the actual innocence exception.

### 3. Ground Three

In Ground Three, Monaco argues "direct denial of Due Process through coercion of a plea in violation of the 5th and 14th Amendments of the United States Constitution." (Doc. No. 1 at 8.) Monaco asserts the following as supporting facts: (1) fear and intimidation used to coerce plea; (2) the plea was coerced while Monaco was in a mentally unstable position; (3) the plea was coerced while Monaco was under the influence of a mind-altering substance impairing his cognitive abilities; and (4) the plea was coerced with the use of fabricated evidence. (*Id.*)

Respondent argues that the portion of Ground Three relating to fabricated evidence is procedurally defaulted, as Monaco failed to present this argument in support of his coercion claim to the state courts. (Doc. No. 19 at 18.) However, Respondent asserts that in his Petition, Monaco argues, "as he did before the Ohio courts, that his plea was coerced due to his mental health problems and his attorney's failure to

---

[7] *See* n.3, *supra.*

review the discovery with him." (*Id.*)  Therefore, Respondent maintains that the rest of Ground Three "was fairly presented to the state courts in his post-conviction petition and the subsequent appeals." (*Id.*)

Monaco argues that "Ground three is not procedurally defaulted, as it and its sub claims were also 'fairly presented' in their entirety and were either ruled on contrary to law or not ruled upon on the merits, or the 'existence of a common core of operative facts uniting the original and newly asserted claims.'" (Doc. No. 23 at 16) (quoting *Mayle v. Felix*, 545 U.S. 644) (2005) (additional internal quotation marks omitted).

A careful review of the record reveals that Monaco failed to properly raise any independent due process claim based on the 5th and 14th Amendments to the state courts on direct appeal or in his PCR Petition. (Doc. No. 19-1, Ex. 11, 22.)   In Monaco's direct appeal, the assignment of error was framed as an abuse of trial court discretion based on Ohio Crim. R. 32.1. (Doc. No. 19-1, Ex. 11, at PageID# 191-94.) While Monaco raised a due process argument based on the 5th and 14th Amendments in his Memorandum in Support of Jurisdiction before the Supreme Court of Ohio, "under Ohio law, a constitutional question cannot ordinarily be raised before the Ohio Supreme Court unless it was first presented to the intermediate appellate court." *Reed*, 2016 WL 6311235, at *6.  As the Sixth Circuit has explained, "'The Ohio Supreme Court has stated that it will not consider constitutional claims not raised and preserved in the Ohio Court of Appeals.'" *Leroy*, 757 F.2d at 99.

While Monaco raised an ineffective assistance of appellate counsel claim for failure to argue on direct appeal that the trial court "abused its discretion when it denied the Defendant his 5th Amendment Right to Due Process when it failed to appoint new counsel upon request," Monaco did not raise an independent due process claim to the state courts and the ineffective assistance claim cannot preserve the underlying claim. *See Davie*, 547 F.3d at 312.  In addition, the Sixth Circuit has held "'that the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court.'" *Williams*, 380 F.3d at 969.  Relatedness of the issues between a claim presented

32

to the state courts and one not presented to the state courts will not save the unpresented claim. *Lott*, 261 F.3d at 607.

The Court finds Monaco's failure to raise his due process claim to the state courts resulted in a procedural default. Therefore, Ground Three is procedurally barred unless Monaco "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. A habeas petitioner must "show that some objective factor external to the defense" caused his failure to comply with the state's procedural rule, *Murray*, 477 U.S. at 488, and if the petitioner fails to do so, the Court need not consider the prejudice prong. *Smith*, 477 U.S. at 533–34.

### a.  Cause and Prejudice

The Sixth Circuit has held that cause to excuse the procedural default of a habeas claim may exist if a petitioner's appellate counsel was ineffective in failing to raise the issue. *See Moore*, 708 F.3d at 776; *McFarland*, 356 F.3d at 699; *Smith v. Ohio Dept. of Rehab. and Corr.*, 463 F.3d at 432; *Berry,* 2016 WL 4177174, at *3. However, the underlying claim of ineffective assistance of counsel must in and of itself not be in default. *See Edwards*, 529 U.S. at 453. As set forth above, in his 26(B) Application, Monaco argued appellate counsel was ineffective for failing to raise five assignments of error based on **trial court error**. All of Monaco's claims of ineffective assistance of appellate counsel based on anything beyond the five assignments of trial court error in his 26(B) Application are themselves procedurally defaulted and cannot serve as cause to excuse the procedural default.

Even assuming *arguendo* that Monaco's five assignments of trial court error could be read to encompass a claim of ineffective assistance of appellate counsel for failure to argue a direct denial of due process through the coercion of a plea in violation of the Fifth and Fourteenth Amendments, the state appellate court considered Monaco's claims of ineffective assistance of appellate counsel on the merits as

33

set forth in his App. R. 26(B) Application and rejected them.  As it relates to Monaco's claim that appellate counsel should have argued that the trial court "abused its discretion when it denied the Defendant his 5th Amendment Right to Due Process when it failed to appoint new counsel upon request," the state appellate court found as follows:

> Appellant first argues appellate counsel was ineffective for failing to argue that the trial court abused its discretion by failing to appoint new counsel upon request. We disagree.
>
> Substitution of counsel is within the sound discretion of the trial court. *Wheat v. U.S.* (1988), 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140; *State v. Jones,* 91 Ohio St.3d 335, 343-44, 2001-Ohio-57, 744 N.E.2d 1163. Thus, we review the trial court's decision under the abuse of discretion standard. *State v. Murphy,* 91 Ohio St.3d 516, 523, 2001-Ohio-112, 747 N.E.2d 765. An abuse of discretion is more than a mere error in judgment; it suggests that a decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
>
> An indigent criminal defendant has a Sixth Amendment right to competent counsel; however, this constitutional right does not extend to a right to counsel of the defendant's choosing. *Thurston v. Maxwell* (1965), 3 Ohio St.2d 92, 93, 209 N.E.2d 204. Likewise, the right to counsel does not include a right to a meaningful or peaceful relationship between counsel and the defendant. *State v. Blankenship* (1995), 102 Ohio App.3d 534, 558, 657 N.E.2d 559, citing *Morris v. Slappy* (1983), 461 U.S. 1, 13, 103 S.Ct. 1610, 75 L.Ed. 610.
>
> A showing of good cause for substitution may include, a conflict of interest, a complete breakdown in the attorney-client relationship or an irreconcilable conflict which leads to an apparently unjust result." *Blankenship,* 102 Ohio App.3d at 558. Once a defendant makes the requisite showing, the trial court's failure to appoint new counsel "amounts to a denial of effective assistance of counsel." *State v. Pruitt* (1984), 18 Ohio App.3d 50, 57, 480 N.E.2d 499.
>
> Disagreement between the attorney and the client over trial tactics and strategy does not warrant a substitution of counsel. *State v. Aden,* 5th Dist. Delaware No. 2006CAA- 09-0066, 2008-Ohio-117, 1 ¶11.
>
> In Appellant's Application for Reopening, Appellant fails to allege any reason for the substitution of trial counsel. Appellant has failed to demonstrate appellate counsel's performance fell below an objective standard of reasonable representation. Moreover, Appellant did not demonstrate he was prejudiced by appellate counsel's representation as required by *Strickland* and *Bradley.*

(Doc. No. 19-1, Ex. 32, at PageID# 422-23.)

34

Again, where, as here, a state court correctly identifies *Strickland* as the standard for assessing a petitioner's ineffective assistance claim, in order for the petitioner to receive habeas relief, the state court's ruling must be an unreasonable application of the *Strickland* standard. *Knowles*, 556 U.S. at 123, 129.

The Court finds the state appellate court reasonably rejected Monaco's claim that appellate counsel was ineffective for failing to argue that the trial court erred when it failed to appoint new counsel upon request. A review of the transcript of the November 30, 2020 hearing on the motion to withdraw the guilty plea reveals the following exchange between trial counsel and the trial court:

> MR. COX: Your honor, thank you. I'm in an interesting position here today, as I am still counsel of record for Mr. Monaco. I had the opportunity to speak with Mr. Monaco outside the Court's presence as his counsel. Based on those discussions, it is my understanding that Mr. Monaco is going to continue to request to withdrawal his guilty plea and wishes to have a trial on the merits of this matter, which obviously is in contravention to the acknowledgment of guilty plea that I had provided to Mr. Monaco, gone over with Mr. Monaco, and Mr. Monaco had signed in open Court. I wanted to state for the record that I am happy to provide information for the Court and Mr. Monaco, although I wanted to just indicate my hesitancy as well that I don't want to put myself or Mr. Monaco in a position to unnecessarily violate attorney-client privilege as to some of the comments and things that he had said to me, which obviously developed and helped shape the legal strategy to which ultimately Mr. Monaco pled guilty in open Court. So for, for that your honor, I will, I'll just be done for the moment.
>
> THE COURT: Well, based on my review of the case law and what would constitute a manifest injustice, I don't think that we need to get into a privileged communication. A lot of it is, it really rests on the knowing, intelligent, and voluntary waiver of rights and the plea that was entered, the acknowledgment form, the written plea, those kind of things.
>
> MR. COX: Certainly.
>
> THE COURT: Unless there's something about that day or, you know, I, I guess I, I don't really know what this - -
>
> MR. COX: Right.
>
> THE COURT: - - manifest injustice is, in light of the *pro se* writing. It seemed more an indignant response to Mr. Styer's characterization of things for purposes of sentencing, but nothing that was, you know, based on my read of the *pro se* filing I didn't get a sense of what this claimed injustice is. So - -

MR. COX: I didn't either your honor.

THE COURT: - - I think at this point, Mr. Monaco would need to present testimony if you want to direct him. Mr. Styer will have the opportunity to cross-examine him and we would start with that.

MR. COX: Certainly.

THE COURT: Which is typically what I get. Okay. So - -

MR. COX: I just wanted to state that for the record, that's all your honor. I have no other knowledge than the *pro se* motion that was filed. I obviously didn't take part in that. Mr. Monaco had acknowledged to me that it had been filed and what his thoughts were, but I'll have him testify to that before the Court so that the questioning can continue.

THE COURT: Okay. So Mr. Monaco, I'm going to go ahead and place you under oath and then your attorney will be able to inquire. Just to be clear, the burden of proof is on you to prove that there was a manifest injustice, manifest injustice in the plea that you entered.

(Doc. No. 19-2 at PageID# 683-84.)

The hearing transcript also reveals that Monaco was able to testify extensively to the basis for his motion to withdraw the guilty plea and for new counsel. Trial counsel inquired of Monaco as to the basis for his motion to withdraw the guilty plea, and Monaco testified as follows:

Q. Okay. Just to begin. On the date of the final hearing and the change of plea, do you recall signing the acknowledgment of guilty plea?

A. Vaguely yes.

Q. Okay.

A. I was very, I was very shaken that morning.

Q. Okay. And would you agree that you and I had had previous discussions about the acknowledgment of guilty plea, about the process of changing a plea, and my specific recommendations to you at the jail, at the Tuscarawas County Jail prior to that? Would you agree with that statement?

A. That you discussed things with me, yes.

Q. Okay. And it is my understanding, and I want to give you Mr. Monaco an opportunity to explain to the Court, it's my understanding that you wish to withdraw the acknowledgment of guilty plea at this time. Is that correct?

36

A. That is correct.

Q. Okay. And what is the basis for your belief that the Court should withdraw the acknowledgment of guilty plea that you signed before the Court?

A. I was not aware of all of the things that were being accused to me, or of me. I, I, know, know of conversations that we did have that touched base on certain items but not all of them. That I, I know that we discussed you coming in to talk to me about the, the discovery items and, and that never transpired as, as a sit down and go through.

Q. And- -

A. You did go through them with my wife.

Q. And do you, do you recall Mr. Monaco the conversations that you and I had which went over each of the fifteen counts on the indictment as to what they alleged and what the charges were? Do you recall those conversations?

A. I don't, I don't recall going over all the indict, all the charges, no.

Q. Okay. Do you recall when the Court asked you about going over all those charges with your counsel?

A. No I do not.

Q. Okay. And is it your belief then that the Court should withdraw the guilty plea and allow you to enter a plea of not guilty so that you can have a trial on the merits of this matter?

A. Yes.

MR. COX: Okay. Your honor at this time I would have nothing further.

(*Id.* at PageID# 685-86.)

Monaco testified to additional information regarding trial counsel's meetings with him before the guilty plea (*id.* at PageID# 687-88, 699-700) and his mental state on the day he pled guilty (*id.* at PageID# 696-97) on cross-examination.

Trial counsel conducted redirect examination, in which Monaco testified as follows:

Q. Mr. Monaco, the last couple times that you and I spoke at the jail, do you recall me bringing to your attention additional evidence that was presented to me regarding what was found on computer items and electronic equipment that was taken from your home pursuant to a search warrant?

37

A. I do recall us talking about that, yes.

Q. So you would agree that, at the time we had those discussions prior to your plea, you were made aware of those, that I had a meeting with the Prosecutor and the Sheriff, Detective Moore, regarding certain items that I viewed. Would you agree with that statement?

A. I, I couldn't hear you in the last part.

Q. Do you recall me telling, our discussions that Mr. Styer the Prosecutor and Detective Moore and myself met at the Tuscarawas County Jail, the Sheriffs Division, to view certain materials that were found on your electronic equipment? Do you recall that?

A. I remember a discussion about that, yes.

Q. Do you remember me explaining to you my concerns about those, that evidence as it related to your home and the bathroom in your house?

A. I don't, I don't remember that part of the conversation.

Q. On the day you signed the plea agreement in open Court, you acknowledged that there was a break in, in the Judge's, the Judge going over the documents with you. Do you remember that?

A. Yes.

Q. Do you remember me telling you what the delay was caused by?

A. No.

Q. Do you recall us going over specific statutory provisions as it related to possible sentencing and the need to make sure that the plea indicated the specific subsections and possible penalties so that you were aware of them and that they were correct? Do you remember that?

A. I remember something to the nature of a change, that's all I remember.

Q. Do you recall signing a version of the plea agreement prior to the Court's break? Do you remember that?

A. I, I think so, yes.

Q. And then when the Court went back on the, when we took that break do you recall that I came back to you with a revised version of the acknowledgment of guilty plea, which I called the colloquy, to go over with you to show you the changes that had been made by the State and Prosecutor Styer and the Judge so that we were all on the same page. Do you recall that?

A. Vaguely, it was, it's kind of cloudy, but yeah.

Q. Okay. And you subsequently signed a second acknowledgment of guilty plea after that change was made. Is that correct?

A. Yeah, if I recall correctly, you wouldn't be able to tell it was my signature because I was shaking so bad.

Q. Do you recall being questioned by the Judge about your understanding of the specific changes that were made, as well as the entirety of the document?

A. No I don't recall that part.

9 Q. Okay. Do you recall the Judge asking you about your faith in, that your faith and your confidence in your legal counsel at the time prior to her imposing sentence? Do you recall that?

A. I don't, I don't recall that.

MR. COX: Okay. Your honor, I have nothing further.

(*Id.* at PageID# 702-04.) Trial counsel asked Monaco whether he had any evidence to present to the trial court. (*Id.* at PageID# 706.)

At no point did Monaco object to trial counsel representing him during the hearing on the motion to withdraw the guilty plea.

Monaco is correct that the state appellate court's statement that "An indigent criminal defendant has a Sixth Amendment right to competent counsel; however, this constitutional right does not extend to a right to counsel of the defendant's choosing" did not apply to him as he had retained counsel. However, the state appellate court correctly recognized that "the right to counsel does not include a right to a meaningful or peaceful relationship between counsel and the defendant." *See Morris v. Slappy*, 461 U.S. 1, 13 (1983). As the Supreme Court later stated:

> We have further recognized that the purpose of providing assistance of counsel "is simply to ensure that criminal defendants receive a fair trial," *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984), and that in evaluating Sixth Amendment claims, "the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such." *United States v. Cronic,* 466 U.S. 648, 657, n. 21, 104 S.Ct. 2039, 2046 n. 21, 80 L.Ed.2d 657 (1984). Thus, while the right to select and be

39

> represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers. See *Morris v. Slappy,* 461 U.S. 1, 13–14, 103 S.Ct. 1610, 1617–1618, 75 L.Ed.2d 610 (1983); *Jones v. Barnes,* 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983).
>
> The Sixth Amendment right to choose one's own counsel is circumscribed in several important respects.

*Wheat v. U.S.*, 486 U.S. 153, 159 (1988). *See also Jones v. Bradshaw*, 46 F.4th 459, 475 (6th Cir. 2022) ("The central teaching of *Wheat* is that a criminal defendant's right to counsel of his choosing is not unlimited.")

Under the doubly deferential standard, the Court finds that the state appellate court reasonably rejected Monaco's ineffective assistance of appellate counsel claim based on appellate counsel's failure to argue that the trial court "abused its discretion when it denied the Defendant his 5th Amendment Right to Due Process when it failed to appoint new counsel upon request." Accordingly, the Court finds Monaco has not satisfied the cause requirement to overcome the procedural default of Ground Three. *See e.g., Moore,* 708 F.3d at 778 ("That procedural default is not excused because even if his appellate counsel had raised the issue, the underlying claim was meritless."); *Warren*, 2010 WL 2837001, at *9 (finding petitioner did not establish cause to excuse the default of habeas claim because state appellate court considered petitioner's 26(B) Application on the merits and determined appellate counsel was not deficient for failing to raise issue on direct appeal).

In the absence of cause, a court need not reach the issue of prejudice. *See Simpson*, 238 F.3d at 409; *Sandridge*, 2017 WL 2255378, at *11.

Accordingly, and for all the reasons set forth above, the Court finds Monaco has failed to establish cause and prejudice to excuse the default of Ground Three.

### b. Actual Innocence

Here, Monaco does not identify any new, reliable evidence of his actual innocence.[8]  The Court finds Monaco has not demonstrated he is entitled to the actual innocence exception.

### 4.     Ground Four

In Ground Four, Monaco argues "constructive denial of counsel in violation of the 6th Amendment of the United States Constitution."  (Doc. No. 1 at 10.)

Respondent argues this claim is procedurally defaulted, as Monaco failed to present this theory and constitutional argument to the state courts.  (Doc. No. 19 at 18.)

Monaco denies that this claim is procedurally defaulted.  (Doc. No. 23 at 16.)

A careful review of the record reveals that Monaco did not raise a claim of constructive denial of trial counsel on direct appeal or in his PCR Petition.  (Doc. No. 19-1, Ex. 11, 22.)  While Monaco raised a "constructive denial" of trial counsel claim in his 26(B) Application, he did so in arguing that appellate counsel was ineffective for failing to argue that "[t]he Trial Court erred when it failed to prove that the defendants [sic] Ohio Constitutional Rights in Art. I, § 10, Part 1 of 3 were not violated."  (Doc. No. 19-1, Ex. 31, PageID# 414-15.)  Even assuming Monaco properly raised an ineffective assistance of appellate counsel claim based on the "constructive denial" of trial counsel in violation of the Sixth Amendment, the ineffective assistance claim cannot preserve the underlying claim.  *See Davie*, 547 F.3d at 312.  In addition, the Sixth Circuit has held "'that the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court.'"  *Williams*, 380 F.3d at 969. Relatedness of the issues between a claim presented to the state courts and one not presented to the state courts will not save the unpresented claim.  *Lott*, 261 F.3d at 607.

---

[8] *See* n.3, *supra.*

The Court finds Ground Four is procedurally barred unless Monaco "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

### a.  Cause and Prejudice

The Sixth Circuit has held that cause to excuse the procedural default of a habeas claim may exist if a petitioner's appellate counsel was ineffective in failing to raise the issue. *See Moore*, 708 F.3d at 776; *McFarland*, 356 F.3d at 699; *Smith*, 463 F.3d at 432; *Berry*, 2016 WL 4177174, at *3. However, the underlying claim of ineffective assistance of counsel must in and of itself not be in default. *See Edwards*, 529 U.S. at 453.

Again, in his 26(B) application, Monaco argued constructive denial of trial counsel in the context that appellate counsel was ineffective for failing to argue that "[t]he Trial Court erred when it failed to prove that the defendants [sic] Ohio Constitutional Rights in Art. I, § 10, Part 1 of 3 were not violated." (Doc. No. 19-1, Ex. 31, PageID# 414-15.)  Reading his briefing broadly, Monaco argued for the first time in his Memorandum in Support of Jurisdiction to the Supreme Court of Ohio on appeal of the state appellate court's denial of his 26(B) Application that his constructive denial of trial counsel constituted a Sixth Amendment violation. (Doc. No. 19-1, Ex. 32-B, PageID# 443-45.)

"[U]nder Ohio law, a constitutional question cannot ordinarily be raised before the Ohio Supreme Court unless it was first presented to the intermediate appellate court." *Reed*, 2016 WL 6311235, at *6.  As the Sixth Circuit has explained, "'The Ohio Supreme Court has stated that it will not consider constitutional claims not raised and preserved in the Ohio Court of Appeals.'" *Leroy*, 757 F.2d at 99.  As a result, any claim of ineffective assistance of appellate counsel based on failure to argue constructive denial of trial counsel in violation of the Sixth Amendment on direct appeal is itself procedurally defaulted, *see Coleman*,

501 U.S. at 735 n.1, and cannot serve as cause to excuse the original procedural default.  *See Carpenter*, 529 U.S. at 453.

In the absence of cause, a court need not reach the issue of prejudice. *See Simpson*, 238 F.3d at 409; *Sandridge*, 2017 WL 2255378, at *11.

Accordingly, and for all the reasons set forth above, the Court finds Monaco has failed to establish cause and prejudice to excuse the default of Ground Four.

### b.  Actual Innocence

Here, Monaco does not identify any new, reliable evidence of his actual innocence.[9]  The Court finds Monaco has not demonstrated he is entitled to the actual innocence exception.

### 5.    Ground Five

In Ground Five, Monaco argues "direct denial of counsel by the trial court in violation of the 6th Amendment of the United States Constitution."  (Doc. No. 1 at 12.)

Respondent argues that this claim is procedurally defaulted "for failure to present to all state courts at the first opportunity," as Monaco did not raise this claim until he filed his 26(B) Application, which the state appellate court denied on the merits.  (Doc. No. 19 at 19.)

Monaco denies that this claim is procedurally defaulted.  (Doc. No. 23 at 16.)

A careful review of the record reveals that Monaco did not raise a claim of "direct denial of trial counsel" on direct appeal or in his PCR Petition.  (Doc. No. 19-1, Ex. 11, 22.)  While Monaco raised an ineffective assistance of appellate counsel claim based on appellate counsel's failure to argue that the trial court "erred when it deprived [Monaco] of his 6th Amendment Right to effective assistance of counsel" and that the "Trial Court abused its discretion when it allowed prior defense counsel Kevin Cox to continue to

---

[9] *See* n.3, *supra*.

represent the defendant and committed overreach in doing so" in his 26(B) Application (Doc. No. 19-1, Ex. 31, PageID# 410), the ineffective assistance claim cannot preserve the underlying claim.  *See Davie*, 547 F.3d at 312.

The Court finds Ground Five is procedurally barred unless Monaco "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.

### a.  Cause and Prejudice

Again, the Sixth Circuit has held that cause to excuse the procedural default of a habeas claim may exist if a petitioner's appellate counsel was ineffective in failing to raise the issue.  *See Moore*, 708 F.3d at 776; *McFarland*, 356 F.3d at 699; *Smith*, 463 F.3d at 432; *Berry*, 2016 WL 4177174, at *3.  The state appellate court considered Monaco's claim of ineffective assistance of appellate counsel for failing to argue that the trial court erred in denying Monaco the effective assistance of trial counsel on the merits and rejected it, as set forth in detail in the discussion of Ground Two, *supra*.  For all the reasons set forth in the discussion of Grounds Two and Three, *supra*, the Court finds Monaco has not satisfied the cause requirement to overcome the procedural default of Ground Five.

In the absence of cause, a court need not reach the issue of prejudice.  *See Simpson*, 238 F.3d at 409; *Sandridge*, 2017 WL 2255378, at *11.

Accordingly, and for all the reasons set forth above, the Court finds Monaco has failed to establish cause and prejudice to excuse the default of Ground Five.

### b.  Actual Innocence

Here, Monaco does not identify any new, reliable evidence of his actual innocence.[10]  The Court finds Monaco has not demonstrated he is entitled to the actual innocence exception.

---

[10] *See* n.3, *supra.*

**6.     Ground Six**

In Ground Six, Monaco argues he was denied his Sixth Amendment right to a fair trial based on judicial bias.  (Doc. No. 1 at 14.)

Respondent argues that "[t]his is a de hors the record claim" that Monaco could have raised in his PCR Petition but did not, and therefore Monaco failed to fairly present this claim to the state courts.  (Doc. No. 19 at 19.)

Monaco denies that this claim is procedurally defaulted.  (Doc. No. 23 at 16.)

A careful review of the record reveals that Monaco did not raise a claim of judicial bias on direct appeal or in his PCR Petition.  (Doc. No. 19-1, Ex. 11, 22.)  Therefore, Ground Six is procedurally barred unless Monaco shows cause and prejudice to excuse the default.

**a.  Cause and Prejudice**

While the ineffective assistance of counsel can normally provide cause to excuse procedural default, "attorney error cannot constitute cause where the error caused a petitioner to default in a proceeding in which the petitioner was not constitutionally entitled to counsel, including a discretionary appeal."  *Barkley v. Konteh*, 240 F. Supp. 2d 708, 714 (N.D. Ohio Dec. 13, 2002) (citing *Coleman v. Thompson*, 501 U.S. 722, 751-53 (1991)).  Here, Monaco had no constitutional right to counsel in post-conviction proceedings. *Tanner v. Jeffreys*, 516 F. Supp. 2d 909, 916-17 (N.D. Ohio Oct. 19, 2007) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Ross v. Moffitt,* 417 U.S. 600, 609–10) (1974)).  Thus, any purported failure of Monaco's attorney in failing to raise certain issues in his PCR Petition cannot serve as cause to excuse the procedural default.

As Monaco fails to show cause, the Court need not consider the prejudice prong.  *Smith*, 477 U.S. at 533–34.

### b.  Actual Innocence

Here, Monaco does not identify any new, reliable evidence of his actual innocence.[11]  The Court finds Monaco has not demonstrated he is entitled to the actual innocence exception.

## IV.  Review on the Merits

### A.      Legal Standard

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings (as opposed to the dicta) of the United States Supreme Court.  *See Parker v. Matthews*, 567 U.S. 37, 132 S.Ct. 2148, 183 L.Ed.2d 32 (2012); *Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Shimel v. Warren,* 838 F.3d 685, 695 (6th Cir. 2016); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  Indeed, the Supreme Court has indicated that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court."  *Parker*, 567

---

[11] *See* n.3, *supra.*

46

U.S. at 48-49; *Howes v. Walker*, 567 U.S. 901, 132 S.Ct. 2741, 183 L.Ed.2d 612 (2012). *See also Lopez v. Smith*, —— U.S. ——, 135 S.Ct. 1, 4, 190 L.Ed.2d 1 (2014) (per curiam) ("Circuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.'" (quoting *Marshall v. Rodgers*, 569 U.S. 58, 133 S.Ct. 1446, 1450, 185 L.Ed.2d 540 (2013))).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. *See also Shimel*, 838 F.3d at 695. However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor*, 529 U.S. at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id*. at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (citing *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA. *Id*. at 786 (internal quotation marks omitted). The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's

contrary conclusion was unreasonable." *Id*. at 785.  The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Id*. (internal quotation marks omitted).  Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786–87.  This is a very high standard, which the Supreme Court readily acknowledged.  *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

### 1.    Ground One

As set forth above, the portions of Ground One fairly presented to the state courts consist of the following ineffective assistance of appellate counsel claims: (1) failure to argue a direct denial of counsel by the court and (2) failure to properly investigate Monaco's case and act in Monaco's best interest.

Respondent argues that the state appellate court's reasonable rejection of these ineffective assistance of trial counsel claims is entitled to AEDPA deference.  (Doc. No. 19 at 36.)  Respondent asserts that Monaco cannot show his right to effective assistance of appellate counsel was violated in any of the subclaims, and this Court "must defer to the state appellate court's decision to deny [] relief because he has not established that the state appellate court's decision is contrary to or an unreasonable application of clearly established Supreme Court precedent pertaining to the Sixth Amendment right to trial counsel during plea negotiations, guilty pleas, and federal constitutional due process." (*Id.* at 43.)

The record reflects Monaco raised these ineffective assistance of appellate counsel claims in his 26(B) Application to the state appellate court and on appeal of the denial of his 26(B) Application to the Supreme Court of Ohio.  (Doc. No. 19-1, Ex. 31, 32-B.)  The state appellate court considered Monaco's claims of ineffective assistance of appellate counsel regarding a failure to argue a denial of the right to

counsel by the court and failure to properly investigate Monaco's case and act in Monaco's best interest and

rejected them as follows:

> In Appellant's Third Assignment of Error, Appellant argues his attorney should have argued the trial court [sic] was ineffective for not requesting an evidentiary hearing to subpoena Appellant's medical records. We disagree.

> A properly licensed attorney is presumed competent. *State v. Hamblin,* 37 Ohio St.3d 153, 524 N.E.2d 476 (1988). Our standard of review is set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Ohio adopted this standard in the case of *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel. First, we must determine whether counsel's assistance was ineffective; whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the trial would have been different. *Id.*

> Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie* (1998), 81 Ohio St.3d 673, 675, 693 N.E.2d 267. In addition, the United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Bradley* at 143, 538 N. E.2d 373, quoting *Strickland* at 697, 104 S.Ct. 2052. Even debatable trial tactics and strategies do not constitute ineffective assistance of counsel. *State v. Clayton,* 62 Ohio St.2d 45, 402 N.E.2d 1189 (1980).

> Appellant argues in his Application to Reopen that his medical records would have shown he was depressed, suicidal, and having hallucinations. However, Appellant has failed to properly introduce any corroborating evidence supporting his self-serving claim that he was mentally incompetent to enter a plea of guilty.

> Based on the foregoing, we do not find that "there is a reasonable probability that, but for [trial] counsel's errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. As Appellant has not demonstrated ineffective assistance of trial counsel, he has not demonstrated appellate counsel was ineffective in failing to raise this assignment of error on direct appeal.

(Doc. No. 19-1, Ex. 32, at PageID# 424-25.)

In order to establish ineffective assistance of counsel, a petitioner must demonstrate that his counsel's conduct was so below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A petitioner also must demonstrate that a trial counsel's performance prejudiced the petitioner's defense to such an extent that it rendered the proceeding unfair. *Id*. To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In other words, a counsel's deficient performance must have "caused the defendant to lose what he otherwise would probably have won" and it must have been "so manifestly ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Mere disagreements by a defendant with tactics or strategies employed by counsel are not enough to support a claim of ineffective assistance of counsel and there is a presumption that the challenged conduct of a petitioner's counsel was a matter of strategy. *Id.* at 689. *See also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

As explained by the United States Supreme Court:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ——, 129 S.Ct. 1411, 173 L.Ed.2d 251. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ——, 129 S.Ct. 1411, 173 L.Ed.2d 251. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d)

applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105.  *See also Kennedy v. Warren*, 428 F. App'x 517, 520 (6th Cir. 2011); *Phillips v. Sheldon*, 2014 WL 185777, at **14-15 (N.D. Ohio Jan. 16, 2014).

The Supreme Court has held a defendant is entitled to effective assistance of counsel in his first appeal as a matter of right.  *Evitts v. Lucey*, 469 U.S. 387, 396, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985).  Thus, the two-part test enunciated in *Strickland* is applicable to claims of ineffective assistance of appellate counsel.  *Smith v. Robbins*, 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000).  An appellant has no constitutional right, however, to have every non-frivolous issue raised on appeal, *Jones v. Barnes*, 463 U.S. 745, 750-54, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983), and tactical choices regarding issues to raise on appeal are properly left to the sound professional judgment of counsel.  *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  "[O]nly when issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome."  *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003) (internal quotation marks and citations omitted).

Here, the Court finds the state appellate court reasonably determined appellate counsel was not ineffective for failure to argue a direct denial of counsel by the court.  As set forth in detail *supra*, trial counsel alerted the trial court to potential issues regarding the attorney-client privilege, and the trial court found counsel could proceed.  As evidenced by the extensive excerpts from the hearing on the motion to withdraw his guilty plea set forth *supra*, trial counsel enabled Monaco to present the grounds for his motion and questioned him extensively.  Monaco fails to show that an argument of direct denial of counsel by the trial court was clearly stronger than the assignment of error appellate counsel pursued on direct appeal; therefore, Monaco cannot prevail on his claim of ineffective assistance of appellate counsel.

Nor can Monaco show that appellate counsel failed to properly investigate Monaco's case and act in Monaco's best interest. Appellate counsel cannot have been ineffective for not requesting Monaco's

mental health records or for not requesting an evidentiary hearing to present these documents, as direct appeals in Ohio are limited to the evidence in the record.  *See, e.g., State v. Foster*, 2024-Ohio-2924, 2024 WL 3621248, at *10 (Ohio Ct. App. Aug. 1, 2024) ("When, as here, a claim of ineffective assistance of counsel is dependent on facts outside the trial record, the defendant must raise that claim by filing a petition for postconviction relief, because the appellate court's review on direct appeal is limited to the matters contained in the trial record.").

As the Supreme Court made clear in *Harrington*, "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." 562 U.S. at 105.  Under this deferential standard, for all the reasons set forth in this Report and Recommendation, the Court finds the state appellate court reasonably determined trial counsel was not ineffective.  It is therefore recommended that the portion of Ground One fairly presented to the state courts be DENIED.

### 2.    Ground Two

As set forth above, the portions of Ground Two fairly presented to the state courts consist of the following ineffective assistance of trial counsel claims: (1) conflict of interest during plea withdrawal hearing; (2) failure to share discovery with Monaco; (3) failure to act in Monaco's best interest; and (4) coercion of a guilty plea.

Respondent argues that the state appellate court's reasonable rejection of these ineffective assistance of trial counsel claims is entitled to AEDPA deference.  (Doc. No. 19 at 24.)  Respondent asserts that although Monaco is dissatisfied "in hindsight with the outcome of his attorney's recommendation, said strategy does not render his trial counsel constitutionally ineffective." (*Id.* at 34.)  Respondent maintains that "[u]nder the double deferential standard of *Strickland* under the lens of AEDPA review, there are ample

reasonable arguments that Monaco's trial 'counsel satisfied *Strickland's* deferential standard.' *Harrington*, 562 U.S. at 105." (*Id.*)

The record reflects Monaco raised these ineffective assistance of trial counsel claims on direct appeal of the denial of his PCR Petition to both the state appellate court and the Supreme Court of Ohio. (Doc. No. 19-1, Ex. 22, 39.) The state appellate court considered these claims on the merits and rejected them as follows:

> In his First Assignment of Error, Monaco argues that the trial court abused its discretion by finding in part that the petition was barred by the doctrine of res judicata. In support Monaco argues that his arguments are not barred by the doctrine of res judicata because he was not represented by counsel in the trial court on his motion to withdraw his guilty plea and because he had provided the trial court with new evidence outside the record to support his request for postconviction relief.
>
> In his Second Assignment of Error, Monaco argues that the trial court erred when the court denied Monaco's petition without a hearing. Specifically, Monaco argues he provided the court with an affidavit and other documents that set forth operative facts to establish substantive grounds for relief to establish that he was denied the effective assistance of counsel, and was therefore entitled to a hearing.
>
> Because the assignments of error are inextricably intertwined we shall address them together.
>
> * * *
>
> In order for an indigent petitioner to be entitled to an evidentiary hearing in a postconviction relief proceeding on a claim that he was denied effective assistance of counsel, the two-part analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) is to be applied. *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *State v. Lytle*, 48 Ohio St.2d 391, 358 N.E.2d 623 (1976); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). The petitioner must therefore prove that: 1). Counsel's performance fell below an objective standard of reasonable representation; and 2). there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different, or he would not have pled guilty. Id.
>
> *Application of res judicata in postconviction-relief proceedings raising ineffective assistance of counsel claims*

53

With respect to post-conviction petitions asserting grounds for relief based on ineffective assistance, res judicata does not bar a post-conviction ineffective assistance- of-counsel claim when either (1) the petitioner had the same attorney at trial and on appeal or (2) he must rely on evidence outside the trial record to establish his claim for relief. * * * The converse is that when the petitioner had a new attorney on appeal and the claim could have been litigated based on the trial record, res judicata applies and the postconviction claim is barred." *State v. Blanton,* 171 Ohio St.3d 19, 2022-Ohio-3985, 215 N.E.3d 467, ¶2, *citing State v. Cole,* 2 Ohio St.3d 112, 113-114, 443 N.E.2d 169 (1982). However, merely providing evidence outside the record is not sufficient to entitle a petitioner to a hearing. Rather, to secure a hearing, a petitioner "'must proffer evidence which, if believed, would establish not only that his trial counsel had substantially violated at least one of a defense attorney's essential duties to his client but also that said violation was prejudicial to the [petitioner].'" Id. at ¶ 31, *quoting Cole* at 114, 443 N.E.2d 169; *State v. Johnson,* 12th Dist. Warren No. CA2022-09-063, 2023-Ohio-879, ¶121.

Monaco is not represented by the same attorney that represented him in the trial court or in *Monaco, I;* however, the attorney representing Monaco in this appeal is the same attorney who represented him in *Monaco, II.* Monaco attached his affidavit and documents to his PCR petition that were not a part of the trial court record.

*Review of affidavits submitted in support of postconviction relief petition*

When reviewing a postconviction petition a trial court "should give due deference to affidavits sworn to under oath and filed in support of the petition, but may, in the sound exercise of discretion, judge their credibility in determining whether to accept the affidavits as "true statements of fact" or "discard frivolous claims." *State v. Calhoun,* 86 Ohio St.3d 279, 282, 714 N.E.2d 905 (1999). In determining the credibility of supporting affidavits in postconviction relief proceedings, the trial court should consider all relevant factors, including (1) whether the judge reviewing the post-conviction relief petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts, and (5) whether the affidavits contradict evidence proffered by the defense at trial. Id. at 285, 714 N.E.2d 905. "Moreover, a trial court may find sworn testimony in an affidavit to be contradicted by evidence in the record by the same witness, or to be internally inconsistent, thereby weakening the credibility of that testimony." Id. "Depending on the entire record, one or more of these or other factors may be sufficient to justify the conclusion that an affidavit asserting information outside the record lacks credibility. Such a decision should be within the discretion of the trial court." Id.

A trial court that discounts the credibility of sworn affidavits must include an explanation of its basis for doing so in its findings of fact and conclusions of law. Id.; *State v. Blanton,* 171 Ohio St.3d 19, 2022-Ohio-3985, 215 N.E.3d 467, ¶98; *State v. Barron,* 12th Dist. Warren No. CA2022-09-059, 2023-Ohio-1249, ¶20, *appeal not allowed,* 170 Ohio St.3d 1517, 2023-Ohio-2771, 214 N.E.3d 590, ¶20.

Justice Donnelly recently expressed the following concern about the treatment of a defendant's affidavit submitted in support of his petition for post-conviction relief,

> It is, of course, possible that Dunlap's claims would not have been borne out by the facts established during an evidentiary hearing. But he does not deserve to have his claims dismissed out of hand with the usual bromides about relying on a "self-serving affidavit." A defendant in this scenario is rarely ever going to have anything to back up a plea-withdrawal motion other than his own claims about what happened. And only an evidentiary hearing will establish whether those claims are true. As I stated in my dissenting opinion in *State v. Bozso,* 162 Ohio St.3d 68, 2020-Ohio- 3779, 164 N.E.3d 344, "a defendant cannot be expected to make a record of the fact that he has been misinformed about a crucial issue at the time he is operating under that misinformation." Id. at ¶44 (Donnelly, J., dissenting). To say that a defendant's claims in support of withdrawing his plea do not warrant an evidentiary hearing because they are not already backed up by solid, admissible evidence puts the defendant in an impossible position and ensures that an evidentiary hearing is never warranted no matter how specific and convincing a defendant's claims might be.

*State v. Dunlap,* 161 Ohio St.3d 1416, 2021-Ohio-181, 161 N.E.3d 704 (Table), *appeal not allowed,* Donnelly, J., *dissenting. See also, State v. Blanton,* 171 Ohio St.3d 19, 2022- Ohio-3985, 215 N.E.3d 467, ¶98 ("But sworn affidavits 'should not lightly be deemed false.' [*State v. Calhoun,* 86 Ohio St.3d 279,] 284, [714 N.E.2d 905 (1999)]. And when a trial court 'discounts the credibility of sworn affidavits,' it should 'include an explanation of its basis for doing so.' Id. at 285, 714 N.E.2d 905.").

*Monaco's Substantive Claims*

Monaco's petition was filed by counsel. As grounds, Monaco claims he received ineffective assistance of trial counsel contending 1). trial counsel did not meet with him and go over the discovery provided by the state; 2). That while in jail Monaco had a "mental health breakdown" and was placed on suicide watch for approximately one week; 3). That he was on medication and suffering mental health issues when he entered his plea and was in fear that his trial attorney was not prepared for trial. [*Jason D. Monaco's Petition to Vacate*

*and Set Aside Sentence Hearing Requested,* filed Nov. 18, 2021 at 6. [Docket Entry No. 95] [Hereinafter, "PCR petition"]; 4). Trial counsel was under investigation by the Board of Professional Conduct during the time period during which he was representing Monaco. Id. at 7.

*Monaco's guilty plea*

A plea of guilty constitutes a complete admission of guilt. Crim. R. 11 (B) (1). "By entering a plea of guilty, the accused is not simply stating that he did the discreet acts described in the indictment; he is admitting guilt of a substantive crime." *United v. Broce,* 488 U.S. 563, 570, 109 S.Ct. 757, 762, 102 L.Ed.2d 927(1989).

Crim. R. 11 requires guilty pleas to be made knowingly, intelligently and voluntarily. The constitutional rights that the trial court must advise the defendant before accepting his or her plea are: (1) a jury trial; (2) confrontation of witnesses against him; (3) the compulsory process for obtaining witnesses in his favor; (4) that the state must prove the defendant's guilt beyond a reasonable doubt at trial; and (5) that the defendant cannot be compelled to testify against himself. *State v. Veney,* 120 Ohio St.3d 176, 2008- Ohio-5200, 897 N.E.2d 621, ¶19. If the trial court fails to strictly comply with these requirements, the defendant's plea is invalid. Id. at ¶31.

The non-constitutional rights that the defendant must be informed of are: (1) the nature of the charges; (2) the maximum penalty involved, which includes, if applicable, an advisement on post-release control; (3) if applicable, that the defendant is not eligible for probation or the imposition of community control sanctions; and (4) that after entering a guilty plea or a no-contest plea, the court may proceed directly to judgment and sentencing. Crim.R. 11(C)(2)(a)(b); *Veney* at ¶ 10-13; *State v. Sarkozy,* 117 Ohio St.3d 86, 2008-Ohio-509, 423 N.E.2d 1224, ¶ 19-26, (post-release control is a nonconstitutional advisement).

For the non-constitutional rights, the trial court must substantially comply with Crim.R. 11's mandates. *State v. Nero,* 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *Veney* at ¶ 15.

Monaco does not argue that the trial court failed to comply with Crim R. 11's strict or substantial compliance requirements before accepting his guilty pleas.

*Monaco's written waivers*

A written waiver of constitutional rights is presumed to have been voluntary, knowing, and intelligent. *State v. Turner,* 105 Ohio St.3d 331, 2005-Ohio-1938, 826 N.E.2d 266, ¶25. In this case, Monaco signed both the original plea agreement and a revised plea agreement. T. Nov. 30, 2020 at 24. *See also, Monaco, I* at ¶4. Further, the trial court conducted a lengthy inquiry concerning

each of Monaco's constitutional rights during the change of plea hearing. *Monaco, I,* at ¶7. The trial judge gave Monaco several opportunities to ask questions or bring any concerns to her attention. Id. Monaco did not.

In the case at bar, the state did not seek consecutive sentences, the sentence Monaco received was negotiated and was known by him prior to entering his plea. T. Nov. 30, 2020 at 26. Additional charges were not pursued by the state based upon the plea negotiations. Id. at 31. Prior to sentencing, the state detailed the evidence in support of each charge to which Monaco pled guilty on the record. T. *Change of Plea and Imposition of Sentence Hearing,* Oct. 21, 2020 at 16-26; *See also, Monaco, I* at ¶7. Monaco did not dispute the recitation, inform the trial judge he was not guilty of some or any of the allegations, or indicate his confusion or inability to comprehend the evidence against him.

We find based upon our review of the entire record, the record discloses that: (1) Monaco's guilty plea was not the result of coercion, deception or intimidation; (2) counsel was present at the time of the plea; (3) counsel's advice was competent in light of the circumstances surrounding the indictment; (4) the plea was made with the understanding of the nature of the charges; and, (5) Monaco was motivated either by a desire to seek a lesser penalty or a fear of the consequences of a jury trial, or both, therefore the guilty plea has been voluntarily and intelligently made. *See, State v. Piacella,* 27 Ohio St.2d 92, 271 N.E.2d 852 (1971), paragraph one of the syllabus.

*Monaco's mental health claims*

The Community Mental Health summary attached to Monaco's PCR petition as Defendant's Exhibit B is dated October 14, 2021. The document indicates that intake was completed on September 22, 2020 with a finding, "Adjustment Disorder with mixed anxiety & depressed mood & Alcohol Use Disorder, severe." The recommendation was for Monaco to attend weekly counseling sessions. The document indicates Monaco completed five sessions before his transfer to prison.

The mental health assessment does not indicate that Monaco was, or is, incapable of exercising rational, intelligent thought as a result of his diagnosis. The report makes no mention of an inability of the intake officer to communicate with Monaco or that Monaco's responses were incoherent, unintelligent or indicative that he was unaware of what was being asked by the intake officer or counselor. Monaco admitted that no special requests in terms of his mental health were made by his counselor while Monaco was in the jail. T. Nov. 30, 2020 at 17. Monaco saw the counselor the Monday before he entered his plea and the Monday after he entered his plea and no special requests were made to the jail by his counselor. Id. Monaco admitted that he had been released from suicide watch after one week, telling the doctor that he was no longer having suicidal thoughts. T., Nov. 30, 2020 at 16.

57

The Supreme Court of Ohio has recognized a distinction exists between being mentally or emotionally ill and not being competent to stand trial. "[A] defendant may be emotionally disturbed or even mentally ill and yet competent to stand trial." *State v. Ferguson,* 108 Ohio St.3d 451, 2006-Ohio-1502, ¶46, *quoting State v. Mink,* 101 Ohio St.3d 350, 2004-Ohio 1580, ¶38. Stated differently, "Incompetency is defined in Ohio as the defendant's inability to understand "* * * the nature and objective of the proceedings against him or of presently assisting in his defense." R.C. 2945.37(A). Incompetency must not be equated with mere mental or emotional instability or even with outright insanity. A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel. *State v. Bock,* 28 Ohio St.3d 108,110,502 N.E.2d 1016 (1986).

Monaco has never raised a claim that he was incapable of assisting his attorney or that he was unable to understand the proceedings. In fact, his pro se filings in the case evidence his acumen with respect to the criminal charges, court proceeding, the role of the prosecutor, defense counsel and the trial judge.

The evidence in the record does not demonstrate a long and continuing history of pronounced irrational behavior on Monaco's part that would give rise to a constitutional right to a formal inquiry into his competency to stand trial. *Drope v. Missouri,* 420 U.S. 162, 180, 95 S.Ct. 896,908, 43 L.Ed.2d 103 (1975); *Brock,* at 110. Nor does the evidence Monaco submitted in support of his claim that his plea of guilty should be vacated because he was emotionally disturbed or even mentally ill at the time he entered his plea, give rise to a claim that he was unable to understand the charges, the effect of his decision to plead guilty, the court proceedings and the sentence. Monaco points to no evidence in the record or outside the record that suggests "a reasonable and legitimate basis for withdrawal of the plea," or that he has a viable defense to the charges. *State v. Xie,* 62 Ohio St.3d 521 at 584, 584 N.E.2d 715; *State v. Cuthbertson,* 139 Ohio App.3d 895, 899, 746 N.E.2d 197 (7th Dist. 2000).

Accordingly, we find that the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that Monaco set forth sufficient operative facts to establish substantive grounds for relief. *Calhoun,* 86 Ohio St.3d at paragraph two of the syllabus; see R.C. 2953.21 (C).

*Monaco's affidavit*

Monaco's affidavit again addresses his claims that he was too mentally distraught to understand the charges, and that his attorney did not review discovery with him. The trial court discounted the affidavit because the trial judge found the statements to be contradicted by the record.

"Not every restriction on counsel's time or opportunity * * * to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment

right to counsel." *Morris v. Slappy,* 461 U.S. 1, 11, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983). "[T]here is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." *United States v. Cronic,* 466 U.S. 648,659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) *United States v. Cronic,* 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) fn. 26; *Accord, State v. Hancock,* 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032.

"[T]he Sixth Amendment imposes on counsel a duty to investigate, because reasonably effective assistance must be based on professional decisions and informed legal choices can be made only after investigation of options." *Strickland,* 466 U.S. at 680. However, "[i]f counsel does not conduct a substantial investigation into each of several plausible lines of defense, assistance may nonetheless be effective .... Limitations of time and money . . . may force early strategic choices, often based solely on conversations with the defendant and a review of the prosecution's evidence." Id. at 681.

The right to competent counsel does not require that a criminal defendant develop and share a "meaningful relationship" with his attorney. *Morris v. Slappy,* 461 U.S. 1, 13,103 S.Ct. 1610, 1617, 75 L.Ed.2d 610(1983); *State v. Blankenship,* 102 Ohio App.3d 534,657 N.E.2d 559(12th Dist. 1995); *State v. Burroughs,* 5th Dist. Delaware No. 04CAC03018, 2004-Ohio-4769, ¶ 11. When there is no demonstration that counsel failed to research the facts or the law or that counsel was ignorant of a crucial defense, a reviewing court defers to counsel's judgment in the matter. *State v. Clayton,* 62 Ohio St.2d 45, 49, 402 N.E.2d 1189(1980), *citing People v. Miller,* 7 Cal.3d 562, 573-574, 102 Cal.Rptr. 841, 498 P.2d 1089 (1972); *State v. Wiley,* 10th Dist. No. 03AP-340, 2004-Ohio-1008, ¶ 21.

Monaco provides no evidence that counsel failed to investigate any line of defense, or that counsel himself failed to review the evidence provided to him by the state. Monaco does not suggest that counsel overlooked or failed to investigate evidence of Monaco's innocence and does not provide any witnesses or other evidence to refute the compelling and overwhelming evidence of his guilt provided by the state. In the case at bar, Monaco points to no specific attorney errors that resulted from counsel's representation, and he makes no showing of prejudice. We cannot presume that the defendant has suffered prejudice. *Hancock,* 108 Ohio St.3d 57, ¶112, citing, *State v. Coleman,* 85 Ohio St.3d 129 at 144, 707 N.E.2d 476 (1999); *State v. Sanders,* 92 Ohio St.3d 245 at 277, 750 N.E.2d 90 (2001).

A review of the whole record demonstrates that defense counsel zealously and effectively negotiated a favorable plea agreement to limit Monaco's potential prison sentence and forgo the potential filing of additional charges. Counsel candidly advised Monaco concerning his appraisal of the case based upon counsel's review of the evidence against Monaco.

59

In the case at bar, Monaco's trial attorney was retained. Monaco signed two written acknowledgements of his understanding of the charges, his constitutional rights, the possible penalties and desire to enter guilty pleas. Monaco told the trial judge that he understood each one of the rights that he was waiving by entering his guilty pleas without hesitation, asking questions or confusion. Monaco further acknowledged he had the opportunity to fully discuss these matters with his attorney. T. *Change of Plea and Imposition of Sentence Hearing,* Oct. 21, 2020 at 15. After a defect in the original plea form was noted, Monaco's trial counsel told the judge that he had an opportunity to review the revised version with Monaco. Id. at 11-12. Monaco agreed. Id. When asked if he had any questions or concerns about the changes that were made to the written plea agreement Monaco responded, "No your Honor." Id. at 12.

Monaco's claims in his affidavit are disingenuous in light of his interview with the police and the hour-long tape-recorded telephone call with the victim in which the allegations were discussed. T. Nov. 30, 2020 at 29-30; State's Exhibit F. Monaco can hardly claim he did not know who is [sic] accuser was or what she was alleging. Clearly, having been interviewed by the police and speaking to the victim by telephone, Monaco was aware of the allegations being made and who was making them. Further, Monaco admitted that his trial attorney discussed the child pornography found by the police on his computer and electronic equipment at his home. T. Nov. 30, 2020 at 23. There is no evidence in the record, including the affidavit of Monaco, that provides any evidence or explanation to cast doubt upon the victim's credibility or motivation in coming forward with the allegations, or that suggests Monaco has a viable defense to any of the charges.

We find the record supports the trial judge's decision discounting the statements made in Monaco's affidavit as being in conflict with the facts contained in the record.

Accordingly, we find that the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that Monaco set forth sufficient operative facts to establish substantive grounds for relief. *Calhoun,* 86 Ohio St.3d at paragraph two of the syllabus; see R.C. 2953.21 (C).

(Doc. No. 19-1, Ex. 41, PageID# 576, 578-89.)

In order to establish ineffective assistance of counsel, a petitioner must demonstrate that his counsel's conduct was so below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution. *See Strickland*, 466 U.S. 668. A petitioner also must demonstrate that a trial counsel's performance prejudiced the petitioner's

defense to such an extent that it rendered the proceeding unfair. *Id.* To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In other words, a counsel's deficient performance must have "caused the defendant to lose what he otherwise would probably have won" and it must have been "so manifestly ineffective that defeat was snatched from the hands of probable victory." *Morrow*, 977 F.2d at 229.

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Mere disagreements by a defendant with tactics or strategies employed by counsel are not enough to support a claim of ineffective assistance of counsel and there is a presumption that the challenged conduct of a petitioner's counsel was a matter of strategy. *Id.* at 689. *See also Perry*, 908 F.2d at 59.

As explained by the United States Supreme Court:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ——, 129 S.Ct. 1411, 173 L.Ed.2d 251. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ——, 129 S.Ct. 1411, 173 L.Ed.2d 251. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105. *See also Kennedy*, 428 F. App'x at 520; *Phillips*, 2014 WL 185777, at **14-15.

Here, the Court finds the state appellate court reasonably determined trial counsel was not ineffective. As set forth in detail above, trial counsel participated in Monaco's case, talked to him over the phone, met with him multiple times in person, requested a Bill of Particulars, requested discovery, met with

61

the prosecutor and the detective, negotiated a plea deal that avoided additional charges being brought for child pornography on Monaco's computer, and assisted Monaco throughout the hearing on Monaco's motion to withdraw his guilty plea. (Doc. No. 19-2.)  Nor does Monaco show that trial counsel coerced his guilty plea.  In fact, Monaco made a number of admissions, including to an hour-long recorded telephone call with his daughter and secretly recording his teenage daughter in the shower. (Doc. No. 19-2 at PageID# 688-89, 693.)  At his sentencing hearing, when given the opportunity to make a statement on his behalf, Monaco stated, "I need help.  That's all I can say.  I'm sorry for harming anybody, especially my daughter.  I'm sorry.  God help me.  There's nothing further your honor." (*Id.* at PageID# 671.)

As the Supreme Court made clear in *Harrington*, "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." 562 U.S. at 105.  Under this deferential standard, for all the reasons set forth in this Report and Recommendation, the Court finds the state appellate court reasonably determined trial counsel was not ineffective.  It is therefore recommended that the portion of Ground Two fairly presented to the state courts be DENIED.

### V.    Second Motion for Discovery

In his Second Motion for Leave of Court for Discovery (Doc. No. 21), Monaco incorporates his requests for information from his first motion for leave to conduct discovery, except for the transcripts filed by Respondent and the Bill of Particulars, and asks for the following additional information:

- Email from prosecutor to trial counsel on or about October 21, 2020, "concerning the 'files' [] mentioned" during the hearing on the motion to withdraw guilty plea.

- "Court order requesting Mental Health Documents for Mr. Monaco from Community Mental Health."

- "Deposition of 'Jane Doe' at Community Mental Health."

- "**Election records from Tuscarawas County Board of Elections showing Steven Thomakos running for Common Pleas seat in the November 2020 election**."

- "Expansion of deposition of Maranda Myers (Monaco)."

(Doc. No. 21 at 1-3) (emphasis in original).

Respondent argues that Monaco is not allowed to introduce evidence not considered by the state court, citing *Cullen v. Pinholster*, 563 U.S. 170 (2011).  (Doc. No. 22 at 2-3.)  Respondent asserts that since Monaco's claims "were adjudicated on the merits before the state courts" and the materials Monaco wants to introduce were not considered by the state courts, Monaco is not entitled to discovery and his motion should be denied.  (*Id.* at 3.)  In addition, Rule 33 only allows interrogatories to be served on parties, and all of the people on whom Monaco wishes to propound interrogatories are not parties.  (*Id.*)

In his reply, Monaco argues that he and post-conviction counsel "presented multiple requests to expand the record, including information that is only available through court order and subpoenas, only to be denied due process by the State."  (Doc. No. 24 at 1.)  Therefore, "the narrow exception mentioned in *Shinn* applies: '[N]arrow exception' applies if the **State's judicial system effectively forecloses direct review of trial-ineffective-assistance claims.**"  (*Id.* at 2) (citations omitted) (emphasis in original).

"[U]nlike the usual civil litigant in federal court, [a habeas petitioner] is not entitled to discovery as a matter of ordinary course."  *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Rule 6 of the Rules Governing Section 2254 Cases allows the discovery available under the Federal Civil Rules for good cause. Habeas Rule 6(a). "Good cause" for discovery exists "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is...entitled to relief."  *Bracy*, 520 U.S. at 908–09 (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)) (ellipsis in original).  "The burden of demonstrating the materiality of the information requested is on the moving party."  *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004) (quoting *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001)). Habeas Rule 6 does not "sanction fishing expeditions based on a petitioner's conclusory allegations."  *Id.* Rather, a habeas petitioner must show good cause for discovery through "specific allegations of fact."  *Id.* (quotation marks omitted).

However, a court does not apply Habeas Rule 6 in isolation. When a state court has already decided a constitutional claim, a petitioner must show that decision was contrary to, or an unreasonable application of, clearly established federal law per 28 U.S.C. § 2254(d)(1) based only on "the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  And a petitioner who argues that a state court's ruling depends on unreasonable findings of fact per 28 U.S.C. § 2254(d)(2) may rely only on "evidence presented in the State court proceeding." *Wood v. Allen*, 558 U.S. 290, 300-301 (2010).  As a result, "district courts are precluded from conducting evidentiary hearings to supplement existing state court records when a state court has issued a decision on the merits with respect to the claim at issue." *Ballinger v. Prelesnik*, 709 F.3d 558, 561 (6th Cir. 2013).

Although *Pinholster* did not discuss Habeas Rule 6, the Sixth Circuit has disregarded evidence gathered during federal habeas proceedings upon § 2254(d)(1) review.  *See Group v. Robinson*, 132 F. Supp. 3d 954, 959 (N.D. Ohio 2015) (citing *Loza v. Mitchell*, 766 F.3d 466, 494 (6th Cir. 2014) (disregarding new evidence the district court had permitted the petitioner to develop in discovery and determining that the state court's adjudication was reasonable based on the facts before the state court).  As this Court has previously explained:

> The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which governs federal habeas petitions, further restricts discovery in habeas proceedings. **First, under AEDPA, habeas courts' review of federal claims that were adjudicated on the merits in state court is limited to evidence contained in the state-court record.** *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("review under [28 U.S.C.] § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits"); 28 U.S.C. § 2254(d)(2) (permitting relief where the state-court decision on a federal claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding"). Habeas courts, therefore, routinely deny requests for discovery of evidence that is barred from their review. *See, e.g., Guysinger v. Buchanan*, 2020 WL 5405892, at *2 (6th Cir. July 16, 2020) (upholding district court's denial of petitioner's motion for discovery in part because the claim to which it applied "was adjudicated on the merits in state court, [and the court's] review [was] limited to the record that was before the state court"); *Davis v. Bobby*, 2017 WL 2544083, at *3 (S.D.

64

Ohio June 13, 2017) ("*Pinholster*'s holding necessarily informs any determination as to whether discovery is warranted .... Put simply, unusable evidence cannot lead to relief.").

AEPDA also restricts the factual development in federal court of habeas claims that were *not* adjudicated on the merits in state court, under § 2254(e)(2). *See* 28 U.S.C. § 2254(e)(2); *Holland v. Jackson*, 542 U.S. 649, 653 (holding that § 2254(e)(2) applies to petitioners' requests for discovery to achieve the same ends as evidentiary hearings); *Shinn v. Ramirez*, – U.S. –, 142 S. Ct. 1718, 1734 (2022) (holding that "under § 2254(e)(2), a federal habeas court may not ... consider evidence beyond the state-court record based on ineffective assistance of state postconviction counsel"); *Shoop v. Twyford*, – U.S. –, 142 S. Ct. 2037, 2044-46 (2022) (holding that a district court's transportation order permitting a prisoner to obtain neurological testing in search of new evidence to support his habeas petition was not authorized under the All Writs Act or § 2254(e)(2) where the petitioner did not show that the desired evidence would have been admissible in supporting a claim for relief). That provision states:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –
>
> (A) the claim relies on –
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

The Supreme Court has interpreted § 2254(e)(2)'s opening clause to require some degree of fault on the applicant's part before the provision will apply and the requirements set forth in subsections (A) and (B) are triggered. In *Michael Williams v. Taylor*, 529 U.S. 420 (2000), the Court held that "a failure to develop the factual basis of a claim is not established unless there is a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Id*. at 432. Under § 2254(e)(2), therefore, district courts may permit factual development of a claim "only if [the prisoner] was not at fault in failing to develop that evidence in state court, or (if he was at fault) if

the conditions prescribed in § 2254(e)(2) were met." *Holland*, 542 U.S. at 652-53. This standard is a "stringent one," barring discovery of new evidence "[i]n all but ... extraordinary cases." *Ramirez*, 142 S. Ct. at 1728.

*Jones v. Shoop*, No. 5:19 CV 2063, 2024 WL 248045, at *3 (N.D. Ohio Jan. 23, 2024) (emphasis added).

As explained in detail above, all of Monaco's claims except for a portion of Ground Two were procedurally defaulted.  There is no good cause for discovery relating to Monaco's procedurally defaulted claims.  *Obermiller v. Shoop*, Case No. 1:19 CV 2193, 2024 WL 404490, at *5 (citing *Williams v. Bagley*, 380 F.3d at 974.  As for the portions of Grounds One and Two that were not procedurally defaulted, those claims were considered on the merits by the state courts, and therefore discovery of evidence is barred from this Court's review.  *Jones*, 2024 WL 248045, at *3.  Therefore, Monaco's Second Motion for Leave of Court for Discovery (Doc. No. 21) is DENIED.

## VI.    Conclusion

For all the reasons set forth above, it is recommended that the Petition be DENIED.


Date: February 4, 2025                          *s/ Jonathan Greenberg*
                                                Jonathan D. Greenberg
                                                United States Magistrate Judge


## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**